In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1021

Dennis DiGiore, Robert Dufkis, Ken Easterly,
Joe Gabuzzi, William E. Johns, et al.,

Plaintiffs-Appellants,

v.

George H. Ryan, Giacomo A. Pecoraro,
and Tina Prose,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 1785--Ruben Castillo, Judge.

Argued October 1, 1998--Decided March 25, 1999

Before Coffey, Kanne, and Diane P. Wood, Circuit
Judges.

Kanne, Circuit Judge.  This case presents the
issue of whether police lieutenants and sergeants
working for the state of Illinois were due
overtime pay under the Fair Labor Standards Act
("FLSA"). The district court found they were not
so entitled because they fall within the
executive exemption of the FLSA. Defendants'
motion for summary judgment was granted. We
affirm.

I.  History

The Illinois Secretary of State ("SOS") employs
Plaintiffs as police officers ("Plaintiffs" or
"Officers")./1 They are not covered by a union
contract and are classified as "Merit
Compensation" employees. The Secretary pays them
an annual salary through bi-monthly paychecks.
They do not receive overtime pay for hours worked
beyond their normal shifts.

Defendants are or were officials with SOS
("Defendants" or "SOS officials")./2 George Ryan
served as the Illinois Secretary of State from
January 1991 through December 1998 (he is now
Governor of Illinois). Giacomo Pecoraro was
Director of the Police Department from 1991
through 1995. Tina Prose has served as the
Director of the Department of Personnel since

1991. These individuals oversaw the disciplinary procedures to which SOS subjects police officers.

Plaintiffs contend that the policies and practices implemented by these three SOS officials subjected them to actual and potential salary deductions. They claim that prior to December 1993, but within the three year statute of limitations for willful violations of the FLSA, the policies and practices found in the Police Department's Accident Policy and Physical Fitness Policy and the SOS's pre-1993 Progressive Disciplinary Policy enabled the SOS officials to suspend Plaintiffs without pay, which to them constituted a salary deduction. They contend that these salary deductions negate their status as salary basis employees and, accordingly, entitles them to overtime pay. This result flows from the conclusion that if the officers cannot be classified as salary basis employees, the SOS officials cannot claim the officers qualify for the exemption. If not within the exemption, the officers should receive overtime pay under the FLSA.

The three policies and how the SOS officials enforced them form the core of this case. The Police Department adopted its Accident Policy ("Accident Policy") in August 1990. This policy governs the disciplinary procedures regarding "chargeable accidents" for police officers of all ranks. Three levels of penalties exist under this policy. For the first offense within twenty-four months, an officer may be suspended from one to three days without pay or required to work one to three days without compensation. For the second offense within twenty-four months, an officer may be suspended without pay for two to five days or required to work the same number of days without compensation. For the third offense within twenty-four months, an officer's amount of suspension or uncompensated work time may range from three to ten days. The penalties are not mandatory; rather the Accident Review Board recommends to the Director of Police the appropriate amount of discipline based, in part, upon this list of suggested penalties.

The Police Department's Physical Fitness Policy ("Fitness Policy"), which was in effect from June 1992/3 until October 1996, also permitted the use of unpaid suspensions as a disciplinary action. Similarly applicable to all ranks of police officers, the Fitness Policy provided for various levels of punishment including verbal warnings, written warnings, and suspensions. Unlike the Accident Policy, however, the Fitness Policy did not specify the type of penalty warranted for specific violations. It did, however, specify that suspensions had to be

administered in an incremental process ranging from two-day to twelve-day periods.

The final policy relevant to this case is the SOS Progressive Disciplinary Policy ("Disciplinary Policy"). This policy governs misconduct by all SOS employees, not only police officers. Under this policy, police officers could be suspended without pay. In 1993, SOS amended the Disciplinary Policy to state that Merit Compensation employees can be suspended only in five-day or equivalent work week increments. The Personnel Director, Tina Prose, testified that SOS made the 1993 amendments to reflect a practice that had been in place since 1990. The Chief Labor Negotiator, William Rolando, confirmed Prose's statement. In addition, Prose testified that the Disciplinary Policy trumps all other policies affecting Merit Compensation employees, including the Accident Policy and Fitness Policy of the Police Department. The SOS manual, however, does not specifically reflect this overarching nature of the Disciplinary Policy.

In applying these policies to specific employees, SOS adopted a mechanism to ensure it complies with the FLSA requirements. First, the Director of Police recommends a course of discipline. The Personnel Department, then, approves or denies the recommendation after the Technical Services Division of SOS's Personnel Department reviews personnel actions specifically for FLSA compliance issues.

These safeguards are not fool-proof, however; SOS has subjected salary basis officers to disciplinary procedures that are inconsistent with the requirements of a salary basis employee. In 1989, SOS suspended Easterly for eighteen days--three full work weeks, plus a partial work week. In 1990, SOS suspended Juliano, a sergeant at the time, without pay for a five-day period that spanned two work weeks under the Disciplinary Policy. SOS has issued no other split-week suspension since that time. SOS issued unpaid suspension to four sergeants in 1991 under the Accident Policy./4 No evidence suggests any SOS police officer with a rank of sergeant or higher has been suspended without pay under the Fitness Policy. As the district court noted, these five cases (Plaintiffs do not address Easterly's 1989 suspension without pay) are the only instances of unpaid suspensions of police offices with the rank of sergeant or higher. The other plaintiffs do not allege to have been subjected to unpaid suspensions, but rather allege that potentially being subjected to the improper salary deductions removes them from the status of salary basis employees. In November

1997, SOS notified the officers of the improper disciplinary actions and compensated them for the suspension or uncompensated work time.

SOS also failed to compensate Sergeant Serafini for the overtime he worked. Serafini's situation differs from that of the other officers, however, because his claim rests not only upon his status as a salary basis employee, but also upon his supervisory role. Since April 1997 as part of a cooperative venture with the United States Secret Service, Serafini has been on a temporary assignment during which he had no supervisory duties. This assignment, by SOS's own admission, enabled Serafini to receive overtime compensation. It agreed to pay Serafini for any past or future overtime compensation associated with that assignment.

Plaintiffs sued SOS under the FLSA alleging that the Accident, Fitness, and Disciplinary Policies and SOS's practices constituted salary deductions that made it impossible for the SOS officials to claim the officers were exempt from the overtime pay requirements because they fell within the statute's executive exemption. After granting Defendants' motion to dismiss the claims against the State of Illinois and Ryan and Pecoraro in their official capacities on Eleventh Amendment immunity grounds, the district court dismissed the officers' claims and granted the SOS officials' motion for summary judgment on the claims raised against them in their individual capacities. It concluded that the SOS policies did not satisfy the test set forth in Auer v. Robbins, ___ U.S. ___, 117 S. Ct. 905 (1997), regarding whether employees are subject to impermissible salary deductions that remove them from any of the FLSA exemptions. Specifically, it found that the SOS policies failed to create a "significant likelihood" of improper salary deductions and that Plaintiffs failed to demonstrate that SOS engaged in an "actual practice" of disciplinary deductions under that test. In addition, the district court concluded that the SOS officials had complied with the Department of Labor regulations' "window of correction" doctrine.

With regard to Serafini's claim, the district court found it moot because SOS had recognized its improper denial of overtime pay and had agreed to compensate him. This decision places Serafini in the position of a non-prevailing party and makes him potentially liable for Defendants' costs. The SOS officials filed a motion for bill of costs totaling $8,864.20 against all Plaintiffs, but later withdrew it voluntarily.

Plaintiffs argue on appeal that the district court should not have granted the SOS officials' motion for summary judgment because SOS failed to establish that Plaintiffs meet the duties and salary tests for the executive exemption under FLSA. With respect to Serafini specifically, Plaintiffs claim that the district court should have granted their motion for summary judgment because he does not qualify for the exemption, as SOS has noted by its attempt to compensate him under the "window of correction." To find otherwise, the Plaintiffs charge, makes it impossible for Serafini to seek judicial redress if SOS fails to live up to its current promise to pay him the overtime it admits it owes him and subjects him to the possibility of having to pay the SOS officials' attorneys' fees and costs as well.

## II.  Analysis

This case raises two issues. First, whether the Eleventh Amendment bars the officers' claims against the SOS officials. Second, whether the officers come within one of the statutory exemptions of the FLSA. Because we find that Plaintiffs come within the executive exemption of the FLSA and, thus, the SOS officials are not liable, we need not reach the Eleventh Amendment issue raised by the officers. Cf. Illinois Health Care Ass'n v. Illinois Dept. of Pub. Health, 879 F.2d 286, 291 n.9 (7th Cir. 1989) (concluding that a court may refrain from reaching issues of standing and sovereign immunity because plaintiffs failed to state a claim under a Rule 12(b)(6) motion). Therefore, we will consider only the FLSA claims in light of the district court's decision to grant the SOS officials' motion for summary judgment.

## A.  Standard of Review

We review a district court's grant of summary judgment de novo. See Tesch v. County of Green Lake, 157 F.3d 465, 471 (7th Cir. 1998). Summary judgment is proper when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, neither "the mere existence of some alleged factual

dispute between the parties," Anderson, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsusita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), is sufficient to defeat such a motion.

B.  The Officers' FLSA Claims

All Plaintiffs (except Serafini) share similar claims against the SOS officials. They argue that the SOS officials cannot avoid their FLSA duty to pay them overtime because they are not salaried employees. In a related claim against the SOS officials, Serafini alleges not only that he too is not a salaried employee, but also that he cannot fall within the executive exemption because his duties since April 1997 do not come within the supervisory requirement of that exemption. Because of this difference we, like the district court, will consider his claims independently.

1.  The Officers Come within the Executive Exemption

State and municipal employers must abide by the FLSA, 29 U.S.C. sec. 201 et seq., just as private employers do. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985). Under the FLSA, employers must pay their employees at least one and a half times their regular wage for the number of hours worked that exceed forty in a given week. 29 U.S.C. sec. 207(a)(1). However, the statute exempts employees whose duties fit within one of the three statutory exemptions-- executive, administrative, or professional--from this requirement.

The Secretary of Labor has the authority to define the scope of this section and the exemptions. See 29 U.S.C. sec. 213(a)(1). Thus, the Secretary's regulations have "the force and effect of law." Cf. Batterton v. Francis, 432 U.S. 416, 425 n.9 (1977). The Secretary has defined a long test and a short test to determine whether an employee falls within each exemption. See, e.g., 29 U.S.C. secs. 541.1(a)-(e) & .119 (providing long and short test for executive exemption). Under these tests, the employer bears the burden of establishing whether an employee fits within an exemption. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974). The short test may be used only if the employee is "compensated on a salary or fee basis at a rate of not less than $250 per week exclusive [of] board, lodging, or other facilities." 29 C.F.R. sec. 541.119, .214, & .315.

The SOS officials claim that the police

officers are not entitled to overtime pay because they qualify for the executive exemption. Neither party disputes that the officers' yearly salaries meet the requirements for the short test, so we focus our attention accordingly. In order to demonstrate that an employee comes within the short test of the executive exemption, the employer must show that: (1) the employee is compensated on a salary basis; (2) the employee's primary duty consists of management responsibilities; and (3) the employee customarily and regularly supervises two or more other employees./5 29 C.F.R. sec. 541.119(a); see also Murray v. Stuckey's, Inc., 939 F.2d 614, 617 (8th Cir. 1991).

We can dispense with two of the three factors with brief discussion. The officers do not contest that they supervised two or more employees during the relevant time-frame and, therefore, meet the supervisory aspect of the short test. On appeal, they raise for the first time an issue regarding whether their duties are managerial in nature. "The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court." Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1238 (7th Cir. 1997); see also Huntzinger v. Hastings Mutual Ins. Co., 143 F.3d 302, 307 (7th Cir. 1998) ("[I]t is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal." (quoting Christmas v. Sanders, 759 F.2d 1284, 1291 (7th Cir. 1985)). A party opposing a motion for summary judgment must raise any genuine material factual disputes to the district court or risk losing. See Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); Fed. R. Civ. P. 56(e).

While it is true that the employer bears the burden of establishing that an employee meets each requirement of the exemption, this burden does not relieve the officers from their responsibility of raising the fact that the SOS officials failed to establish their burden before the district court. Before the district court, Plaintiffs did not dispute Defendants' statements in Defendants' Motion for Summary Judgment or those in Defendants' Reply Memorandum in Support of Motion for Summary Judgment that the police officers supervised two to twenty-three subordinates and were responsible for "making assignment[s], determining how assignments will be carried out, setting work schedules, reporting directly to the next superior officers, attending management meetings, etc." Because Plaintiffs failed to contest these statements of fact in a

timely manner before the district court, they waived their right to raise this issue before us.

The remaining thrust of Plaintiffs' appeal is aimed at the district court's determination that the officers were salaried employees under the executive exemption short test despite the Accident, Fitness, and Disciplinary Policies. Plaintiffs claim that the Accident, Fitness, and Disciplinary Policies created a significant likelihood that they would be subject to impermissible deductions in pay. They also argue that the five instances in which SOS improperly subjected employees to deductions in their pay as part of disciplinary actions demonstrate that SOS actually made impermissible deductions. Thus, they believe the district court incorrectly granted the motion for summary judgment.

The regulations explain that an employee is deemed to be on a salary basis:

if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. sec. 541.118(a). This requirement, commonly referred to as the "no-docking rule," prohibits employers from deducting an employee's pay based on partial day absences, violations of rules, and other indicators of the quantity or quality of an employee's work. See Bankston v. Illinois, 60 F.3d 1249, 1253 (7th Cir. 1995). However, "[p]enalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. sec. 541.118(a)(5). The officers in this case contend that the SOS officials subjected them to improper pay deductions based on the policies and practices found in the Accident, Fitness, and Disciplinary Policies.

In Auer v. Robbins, the Supreme Court settled the conflict growing between the circuits regarding the legal standard by which courts should determine whether an employee is subject to impermissible pay deductions. 117 S. Ct. at 910-11. In deferring to the Secretary's interpretation of the salary basis test presented in the Secretary's amicus brief, the Court held that an employer cannot claim exempt status for an employee and find shelter from liability under the FLSA, if its "employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.'" 117 S. Ct. at 911 (summarizing the Secretary's

interpretation of the regulations). The Court also relied upon the Secretary's amicus brief to explain this standard further:

That standard is met . . . if there is either an actual practice of making such deductions or an employment policy that creates a "significant likelihood" of such deductions. The Secretary's approach rejects a wooden requirement of actual deductions, but in their absence it requires a clear and particularized policy--one which "effectively communicates" that deductions will be made in specified circumstances. This avoids the imposition of massive and unanticipated overtime liability . . . in situations in which a vague or broadly worded policy is nominally applicable to a wide range of personnel but is not "significantly likely" to be invoked against salaried employees.

Id.

Our previous opinion in Bankston comports with the interpretation in Auer that the no-docking rule "does not require proof that a deduction actually has been made from an employee's salary," 60 F.3d at 1253, but the Court in Auer established a higher bar than we had. We had previously concluded that "it is enough that [a deduction] could have been made for this regulation to remove an employee from exempt status." Id. (emphasis added). We reasoned that employees who were subject to policies that created a theoretical possibility of improper disciplinary deductions from the exemptions did not qualify as salary basis employees. In Auer, the Supreme Court clarified that a theoretical possibility of an impermissible pay deduction is not enough to demonstrate that an employee does not qualify under the salary basis prong of the exemption. 117 S. Ct. at 911. Rather, absent an actual practice, the employer must subject employees to a policy that creates the "significant likelihood" of impermissible pay deductions in order to remove the employee from salary basis status. Id. A policy that falls within the scope of this category is "one which 'effectively communicates' that deductions will be made in specified circumstances." Id. Thus, under Auer, an employer whose policy creates a significant likelihood of impermissible deductions or who actually engages in practices of making impermissible deductions is considered to be impermissibly docking an employee's pay.

a.  The SOS Officials Did Not Create
a Significant Likelihood
of Improper Salary Deductions

We agree with the district court's conclusion

that Plaintiffs did not face a significant likelihood of pay deductions. The officers present a factual situation similar to that posed in Auer, in which the Supreme Court addressed the issue of whether St. Louis police sergeants and a police lieutenant were subject to disciplinary deductions so as to disqualify them from the executive exemption. Id. at 910. The Court concluded that the policy upon which the officers relied to establish their claims did not create a significant likelihood that they would be subject to impermissible deductions even though the policy, as described in the Police Manual, listed various rule violations and specified the range of penalties for each. Id. at 911. It found that the manual did not effectively communicate that the officers would be subject to impermissible pay deductions because the manual applied to employees paid on a salary basis, as well as those who were not. Id. The Court stated:

[T]he manual does not "effectively communicate" that pay deductions are an anticipated form of punishment for employees in petitioners' category, since it is perfectly possible to give full effect to every aspect of the manual without drawing any inference of that sort. If the statement of available penalties applied solely to petitioners, matters would be different; but since it applies both to petitioners and to employees who are unquestionably not paid on a salary basis, the expressed availability of disciplinary deductions may have reference only to the latter. No clear inference can be drawn as to the likelihood of a sanction's being applied to employees such as petitioners.

Id. at 911-12; see also Balgowan v. New Jersey, 115 F.3d 214, 219 (3d Cir. 1997) (finding that the State's "broad-based policy fails to 'effectively communicate' that pay deductions are an anticipated form of punishment" for the employees because it applied to all employees, not just those who maintained the status of salary basis.); Carpenter v. City & County of Denver, 115 F.3d 765, 767 (10th Cir. 1997) (finding that "the City Charter applies to all members of the classified service, and, thus, does not 'effectively communicate' that the statement of available penalties applies only to plaintiffs.").

The policies upon which the officers rely similarly apply to salary basis and non-salary basis employees of the police department, in the case of the Accident and Fitness Policies, and of the SOS, in the case of the Disciplinary Policy. The officers do not demonstrate that SOS communicated through these policies, its employment manuals, or other forums that it would

subject salary basis employees, such as the officers, to the relevant deductions in these policies. Thus, unlike the employees in Ahern v. County of Nassau, 118 F.3d 118, 121-22 (2d Cir. 1997), who established that the employment manual stated that salary basis employees were subject to the deductions, but who failed to demonstrate that the deductions would be made in specific instances, the officers in the case before us did not show that the broad-based policies subjected them, along with the non-salary basis employees, to deductions that would be impermissible under the FLSA.

The manner in which SOS applied the policies also makes it significantly unlikely that salary basis employees would be subject to impermissible deductions. In addition to its broad application of the policy to all employees regardless of their salary status, SOS implemented a review practice to ensure that the policies would not impact salary basis employees in a way that would violate the FLSA. We agree with the Ninth Circuit's conclusion that a similar review process conducted by city managers in which all disciplinary suspensions were examined to ensure compliance with applicable laws, including the FLSA, see Stanley v. City of Tracy, 120 F.3d 179, 184 (9th Cir. 1997), makes it improbable that the policies create a significant likelihood of impermissible deductions. Because the officers failed to demonstrate that the Accident, Fitness, and Disciplinary Policies effectively communicated that they would be subject to deductions in specified circumstances, we conclude that the policies did not create a significant likelihood that the officers would be subject to improper deductions.

b.  The SOS Officials Did Not
Engage in the Actual Practice of
Improper Salary Deductions

Plaintiffs' alternative charge that the SOS officials engaged in the actual practice of improper pay deductions with respect to some of the officers also falls short of the mark. They contend that the SOS issued five suspensions that were impermissible under the FLSA. The SOS does not deny that it issued the suspensions, but it also points out that it notified the officers of the improper disciplinary actions and told them that they would be compensated for the deductions. While it is true that the practice of actually suspending sergeants and lieutenants without pay for less than one week would raise an issue that could defeat a motion for summary judgment, see Auer, 117 S. Ct. at 911, the district court found that these five isolated incidents did not amount to an actual practice

and that even if they did rise to that level, the defendants had preserved the officers' status as exempt employees by compensating the officers for the improper deduction in accordance with the FLSA's "window of correction."

Plaintiffs argue that the undisputed actual incidents in which the SOS officials improperly deducted the pay of some sergeants and lieutenants as part of disciplinary actions demonstrate that the SOS officials engaged in the actual practice of making impermissible deductions. Like the district court, we find Plaintiffs' argument unpersuasive. In Auer, the Supreme Court concluded that a one-time deduction under unusual circumstances did not remove an employee from exempt status. Id. Similarly, the Tenth Circuit concluded that two cases of improper deductions under unusual circumstances also did not remove an employee from exempt status. See Carpenter, 115 F.3d at 767. The Eleventh Circuit has found that six disciplinary suspensions would not prevent an employer from availing itself of the window of correction. See Davis v. City of Hollywood, 120 F.3d 1178, 1180 (11th Cir. 1997)./7 Plaintiffs base their claims that the five suspensions constitute an actual practice based on a record that persuades us to conclude otherwise. The general practice of SOS is to limit officer suspensions to full week periods, which are permissible forms of disciplinary actions for salary basis employees. No split week suspensions have been issued since 1990. SOS updated the Disciplinary Policy manual to reflect this practice as well in 1993. Individual examination of the five suspensions demonstrates that they occurred under unusual circumstances. Juliano's suspension occurred before any of the defendants took office. Those suspensions that occurred in 1991 were also unusual in that Pecoraro, one of the individuals who must approve suspensions, was absent. These instances simply do not demonstrate that improper deductions occurred with some frequency or under circumstances that were anything but unusual.

Even if these five incidents rose to the level of frequent and, thus, constituted an actual practice by the SOS officials, the officers would still be exempt from the FLSA because the SOS officials availed themselves of the regulatory "window of correction." The Secretary provided employers with a window of correction to permit them to retain the exempt status of their employees if they inadvertently made deductions inconsistent with the salary basis test. The regulations provide that when "a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be

considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." 29 C.F.R. sec. 541.118(a)(6); see also Auer, 117 S. Ct. at 912. The employer does not have to reimburse the employee immediately, so long as it conveys its genuine intent to compensate the employee for the improper deduction. See 29 C.F.R. sec. 541.118(a)(6). In November 1997, Prose sent the officers who had been suspended improperly a letter notifying them of the impermissible disciplinary action and stating that SOS would reimburse them for the improper deductions. Plaintiffs have not cast doubt upon the sincerity of SOS's attempts to redress its previous wrongs. Thus, the SOS officials fall within the protection offered by the window of correction, and the employees cannot discard their exempt status based on these isolated incidents.

Because the Accident, Fitness, and Disciplinary Policies do not create the significant likelihood that Plaintiffs would be subject to impermissible deductions and because SOS did not engage in the actual practice of imposing improper deductions, the SOS officials met their burden of establishing that Plaintiffs are employed on a salaried basis. And, because Plaintiffs concede they engaged in supervisory duties and waived their right to dispute whether their duties are managerial in nature, we conclude that the SOS officials established that Plaintiffs come within the executive exemption and, therefore, are exempt from compensating them on an overtime basis.

2. Sergeant Serafini's Claim Is Moot

SOS admits that Serafini does not come within the executive exemption of the FLSA because during his temporary assignment to work with the Secret Service, he did not supervise other employees. See 29 C.F.R. sec. 541.119. Defendants agreed to pay Serafini for past, present, and future hours of overtime worked as part of this assignment. The district court concluded that this agreement rendered Serafini's claim against the SOS officials moot and granted the SOS officials' motion for summary judgment on this ground.

A case is moot if no controversy exists between the parties. See Jordan v. Indiana High Sch. Athletic Ass'n, Inc., 16 F.3d 785, 787 (7th Cir. 1994); cf. United Airlines, Inc. v. McDonald, 432 U.S. 385, 400 (1977) (Powell, J., dissenting) ("The settlement of an individual claim typically moots any issues associated with it."). For example, a case will be judged to be moot when "there is no reasonable expectation that the

wrong will be repeated." See Winokur v. Bell Fed. Savings & Loan Assoc., 560 F.2d 271, 274 (7th Cir. 1977) (quoting United States v. Aluminum Co. of Am., 148 F.2d 416, 488 (2d Cir. 1945)). No actual controversy between Serafini and the SOS officials existed by the time the case reached the district court level. While "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot," the case "may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953).

We believe the SOS officials sufficiently demonstrated that Serafini's claim is moot. First, it has promised to pay Serafini for past, present, and future overtime hours worked in this temporary position. Second, the failure to comply with the FLSA arose under the unusual circumstances of an employee who in his normal job assignment is an exempt employee, but because of a special temporary assignment no longer qualifies for the exempt status. Third, the SOS officials, as we concluded with regard to the other Plaintiffs' claims, do not engage in the actual practice or adhere to policies that create a significant likelihood that employees will be improperly classified as exempt employees. Serafini's case is an isolated incident that, when recognized by SOS, was corrected by compensating him in accordance with the FLSA. Therefore, we agree with the district court that Serafini's claims are moot.

Serafini argues that we should reverse the district court's decision because it would bar Serafini from future relief if SOS failed to live up to its promise under the doctrine of res judicata. We find no reason to conclude that a decision based upon the conclusion that a claim is moot creates a barrier for future litigation of the sort Serafini contemplates. A final judgment on the merits has the effect of precluding future relitigation of the same issues through the doctrine of res judicata. See United States v. Munsingwear, Inc., 340 U.S. 36, 38 (1950); see also Gilbert v. Braniff Int'l Corp., 579 F.2d 411, 413 (7th Cir. 1978). Courts consider an order final "if it terminates the litigation between the parties to the suit, and finally determines, fixes, and disposes of their rights as to the issues made by the suit." Gilbert, 579 F.2d at 413. For example, we recognize that if a case on appeal becomes moot and the appellate court loses jurisdiction, the appellate court should protect the appellant from the effects of res judicata by ordering any

previous orders in the case dismissed simultaneously with the dismissal on appeal. See Smith v. State Farm Mutual Auto. Ins. Co., 964 F.2d 636, 637 (7th Cir. 1992). This rule is consistent with the notion that when a court decides an issue based on justiciability, it does not determine the rights of the parties as to that particular case. Similarly, we have held that "a ruling is not res judicata when made in a case subsequently dismissed for want of jurisdiction." Sach v. Ohio Nat'l Life Ins. Co., 148 F.2d 128, 132 (7th Cir. 1945). Following this line of cases to its logical conclusion results in the determination that dismissals based on justiciability issues should preclude only relitigation of the same justiciability issue, but not future suits based on the merits of the same claim. See McCarney v. Ford Motor Co., 657 F.2d 230, 233 (8th Cir. 1981) (holding that a dismissal based on justiciability grounds does not have a res judicata effect on claims on the merits); Payne v. Panama Canal Co., 607 F.2d 155, 158 (5th Cir. 1979) (same). Thus, Serafini's concerns about the effects of res judicata are unwarranted.

Finally, in reaching its conclusion with regard to Serafini, the district court did not address the effect of this decision on Defendants' abilities to recoup costs from Plaintiffs. Under the Federal Rules of Civil Procedure, the prevailing party has the right to recover costs. Fed. R. Civ. P. 54(d). By granting the SOS officials' motion for summary judgment, the district court placed the SOS officials in the position of the prevailing party. Defendants filed a motion for bill of costs, but voluntarily withdrew it. Even so, we want to make clear that Serafini should not be held responsible for the costs incurred by Defendants during this trial. Defendants should not be able to alleviate both the claim and the costs they incurred as a result of it by admitting their wrongdoing and compensating Serafini retroactively. Thus, we affirm the district court's decision to grant summary judgment on behalf of the SOS officials and clarify that Serafini is not liable for the costs incurred by the SOS officials as they relate to this specific lawsuit.

III.  Conclusion

In summary, with respect to the officers other than Sergeant Serafini, the SOS officials through its policies and practices did not subject the officers to impermissible pay deductions as part of the SOS disciplinary actions in a manner that would remove the officers' exempt status under the FLSA. First, the policies did not create a substantial likelihood that the officers would be

subject to impermissible deductions. Second, even
though five officers did receive suspensions that
led to improper deductions, the SOS, upon
realization of its mistake, rectified the
situation by promising to compensate the specific
employees, thus, availing themselves of the
regulatory window of correction. These isolated
incidents do not rise to the level of an actual
practice. With respect to Serafini, the SOS
acknowledged its mistake in failing to provide
him with overtime compensation and promised to
compensate him accordingly, thus, making his
claim moot. Therefore, we AFFIRM the district
court's decision granting the SOS officials'
motion for summary judgment; further Serafini is
not liable under Rule 54(d) for costs incurred by
the SOS officials.

FOOTNOTES

/1 Plaintiffs are: Sergeant Dennis DiGiore, Sergeant
Robert Dufkis, Lieutenant Ken Easterly, Sergeant
Joe Gabuzzi, Lieutenant William Johns, Sergeant
Michael Juliano, Sergeant James Kazimour,
Sergeant Dennis Serafini, Sergeant Marian Vrtik,
and Lieutenant Bradley Warren.

/2 George Ryan and Giacomo Pecoraro were named in
both their official and individual capacities.
Plaintiffs later added Tina Prose in her
individual capacity only.

/3 Other versions of this policy appear to have been
in effect as early as 1989.

/4 SOS gave Sergeants DiGiore, Johns, and Kenton
Manning (who is not a plaintiff in this case) the
option of a one-day suspension or working an
uncompensated shift because of a chargeable
traffic accident in which they were involved.
They chose to work an uncompensated shift. SOS
issued an unpaid suspension for Lieutenant
Raymond Wood (who is also not a plaintiff in this
case) as well, but he retired before the
suspension took effect.

/5 The regulations specifically provide that an
employee who meets the criteria for the short
test:

is deemed to meet all the requirements [of the
long test] if the employee's primary duty
consists of the management of the enterprise in
which employed or of a customarily recognized
department or subdivision thereof and includes
the customary and regular direction of the work
of two or more other employees therein.

29 C.F.R. sec. 541.119(a).

/6 Before the Supreme Court's decision in Auer, at least two circuits required that actual deductions had to occur to remove employees from their status as a salary basis employee. See McDonnell v. City of Omaha, 999 F.2d 293, 296–97 (8th Cir. 1993); Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 805 (11th Cir. 1991). Other circuits, including this circuit, disagreed with this strict requirement. See Yourman v. Dinkins, 84 F.3d 655, 656 (2d Cir.1996); Bankston, 60 F.3d at 1253; Kinney v. District of Columbia, 994 F.2d 6, 11 (D.C. Cir. 1993); Abshire v. County of Kern, 908 F.2d 483, 487 (9th Cir. 1990).

/7 These cases are additionally persuasive because they adhere to the Secretary's interpretation of the actual practice prong of this analysis. In the Secretary's amicus brief to the Supreme Court in Auer, which the Court heavily relied upon in reaching its conclusions in that case, the Secretary stated:

[w]hen there is evidence that improper deductions have been taken with some frequency for violations of a work rule by employees having a particular rank, it is fair to conclude that all employees in that rank are "subject to" such deductions. On the other hand, when such deductions have not occurred or have only occurred in idiosyncratic or unusual circumstances, that conclusion generally would not be warranted.

DiGiore v. Ryan, No. 96 C 1785, slip op. at 17-18 (N.D. Ill. Dec. 4, 1997) (quoting Amicus Brief for the U.S. Department of Labor at 22, Auer v. Robbins, 117 S. Ct. 905 (1997)).