*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HARRY N. YOUNG JR., | ) | |
| | ) | Supreme Court No. S-17816 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-10030 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA; OFFICE OF | ) | |
| LIEUTENANT GOVERNOR, | ) | No. 7582 – January 28, 2022 |
| LIEUTENANT GOVERNOR KEVIN | ) | |
| MEYER, in an official capacity; | ) | |
| DIVISION OF ELECTIONS, and | ) | |
| DIRECTOR GAIL FENUMIAI, in an | ) | |
| official capacity, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Matthew Singer, Lee C. Baxter, Schwabe, Williamson & Wyatt, P.C., Anchorage, for Appellant. Katherine Demarest, Assistant Attorney General, Janell Hafner, Solicitor General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska.

Before: Winfree, Maassen, and Carney, Justices. [Bolger, Chief Justice, and Borghesan, Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

The lieutenant governor refused to certify an application for a ballot initiative, and the group backing the initiative filed suit.  In a court-approved stipulation, the Division of Elections agreed to print the signature booklets and make them available to the initiative's sponsors without waiting for the court to decide whether the initiative application should have been certified.  A voter sued the State, asserting that it would violate the initiative process laid out in article XI, section 3 of the Alaska Constitution if the signature booklets were printed and made available before the initiative had been certified.  In response the State and the initiative group entered into a new stipulation providing that the State would not make the signature booklets available until the court ordered it.

The superior court granted the State summary judgment in the voter's suit, concluding that he lacked standing and his case was moot.  The voter appeals.  He argues both that he has standing and that his case should be heard because of two exceptions to the mootness doctrine:  the public interest exception and the voluntary cessation exception.  Without reaching the issue of standing, we affirm the superior court's judgment on mootness grounds, concluding that the court did not abuse its discretion by declining to apply either exception to the doctrine.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Young Challenges The State's Court-Approved Stipulation To Prepare Petition Booklets Before The Initiative Is Certified.

The Alaska Constitution allows citizens to "propose and enact laws by the initiative."[1]  Sponsors of an initiative begin the process by submitting an application to

---

[1]    Alaska Const. art. XI, § 1.

the lieutenant governor, who certifies it "[i]f he finds it in proper form."[2] The lieutenant governor then prepares signature booklets for the sponsors to circulate.[3] If the sponsors gather enough signatures from qualified voters, they submit their petition to the lieutenant governor,[4] who — within certain time constraints — places the initiative on the next general election ballot.[5]

The initiative at issue is Alaska's Better Elections Initiative (19AKBE), which proposed various changes to Alaska's election laws. As we summarized it in *Meyer v. Alaskans for Better Elections* (*Alaskans for Better Elections I*), the initiative would "most significantly change[] Alaska's election laws by: (1) replacing Alaska's current party-based primary system with an open, nonpartisan primary; (2) establishing ranked-choice voting in general elections; and (3) adopting new disclosure and disclaimer requirements for independent expenditure groups and their donors."[6] On August 30, 2019, the lieutenant governor refused to certify the initiative application on the ground that it violated the single-subject rule, a statutory requirement that a "bill shall

---

[2] *Id.* § 2 ("The application . . . shall be filed with the lieutenant governor. If he finds it in proper form he shall so certify. Denial of certification shall be subject to judicial review.").

[3] Id. § 3 ("After certification of the application, a petition containing a summary of the subject matter shall be prepared by the lieutenant governor for circulation by the sponsors.").

[4] *Id.* ("If signed by qualified voters who [meet certain numerical criteria] . . . [the petition] may be filed with the lieutenant governor.").

[5] *Id.* § 4 ("The lieutenant governor . . . shall place [the proposition] on the ballot for the first statewide election held more than one hundred twenty days after adjournment of the legislative session following the filing [of the initiative petition].").

[6] 465 P.3d 477, 490 (Alaska 2020).

be confined to one subject."[7] On September 5 the 19AKBE ballot group sued the Division of Elections and the lieutenant governor (collectively the State), seeking to reverse the denial of certification.[8] Because of the constitutional time constraints, the sponsors had only until mid-January 2020 to gather enough signatures if 19AKBE were to appear on the 2020 general election ballot.

To minimize preliminary motion practice, the parties entered into a stipulation on September 9. The State agreed to immediately send the 19AKBE signature booklets to the printer "with the goal of making them available to the [ballot group] by September 23, 2019." The ballot group acknowledged that the State was willing to stipulate to this step "prior to the merits of the case being decided because application of the single-subject rule [was] the only disputed issue in the case," and the ballot group agreed to post a $1,500 bond to cover the costs of printing the booklets. The court approved the stipulation the next day.

Harry Young sued the Division, its director, and the lieutenant governor on September 18, seeking declaratory and injunctive relief to prevent the State from preparing the signature booklets and making them available to the 19AKBE sponsors before the initiative application had been certified. Young relied on the time line provided by article XI, section 3 of the Alaska Constitution: "*After certification of the application*, a petition containing a summary of the subject matter shall be prepared by the lieutenant governor for circulation by the sponsors." (Emphasis added.) Young argued that preparing the petition booklets before certification was plainly unconstitutional.

---

[7] *See* AS 15.45.040(1).

[8] *Alaskans for Better Elections v. Meyer* (*Alaskans for Better Elections II*), No. 3AN-19-09704 CI, 2019 WL 6499035, at *1 (Alaska Super., Oct. 28, 2019).

Young is an Alaska resident, a registered voter, and a party precinct leader. In an affidavit he stated his belief "that our government has a heightened duty to follow the words of the Constitution" and that if it does not, "our system of laws will become meaningless and will eventually result in tyranny." He claimed that the State's agreement to prepare and make available the petition booklets before the initiative was certified was "unfair to [him] and all other voters who rely on the State to follow the enacted laws," creating "confusion" and "lead[ing] the State down a slippery slope where the state government may feel free to ignore other terms of our Constitution."

**B.    After The State Withdraws The Stipulation, The Superior Court Rules That Young Lacks Standing And His Case Is Moot**.

The day after Young filed suit, the State and the initiative group modified their agreement; the State admits that this was in response to Young's lawsuit. An amended stipulation provided that the State would "not distribute the petition booklets before a court order requiring distribution."

Young accordingly withdrew his request for an injunction, but he moved for summary judgment on his declaratory relief claim. He admitted that no live controversy remained, but he urged the superior court to apply the public interest or voluntary cessation exceptions to the mootness doctrine and grant him a declaratory judgment.[9]

---

[9]    "The [public interest] exception consists of three factors: '(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.'" *Akpik v. Off. of Mgmt. & Budget*, 115 P.3d 532, 535 (Alaska 2005) (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska 1995)). Under the "voluntary cessation" exception, the defendant's voluntary cessation of the challenged practice may not be enough to moot the case unless "subsequent events made
(continued...)

The State cross-moved for summary judgment on three grounds. First, the State argued that Young lacked standing to bring his claim. Second, it argued that because the parties had amended their stipulation and the State had not distributed the 19AKBE signature booklets before certification, Young's case had become moot and no exceptions to the mootness doctrine applied.[10] Third, the State argued on the merits that the superior court in the 19AKBE litigation had authority to authorize the booklet printing and distribution as interim relief in that case.

The director of the Division of Elections submitted an affidavit stating that the Division had never before entered into a stipulation for pre-certification distribution of initiative signature booklets and that it "currently ha[d] no plans to enter into [another] stipulation like the original [19AKBE] stipulation . . . in this or any other case." The director explained that the Division had deviated from its historical practice in the 19AKBE case because there was only one discrete legal issue that would determine whether the petition booklets could be circulated; if a ruling on the merits determined that the initiative violated the single-subject rule, the entire initiative would be invalidated, and there would be no need for the Division to reprint amended versions of the booklets.

---

[9]     (...continued)
it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Leahy v. Conant*, 436 P.3d 1039, 1048 n.46 (Alaska 2019) (quoting *Slade v. State, Dep't of Transp. & Pub. Facilities*, 336 P.3d 699, 700 (Alaska 2014)).

[10]     We note that in the meantime, in the suit brought by the initiative's sponsors, the superior court concluded that the initiative complied with the single-subject rule and ordered the State to certify it and distribute the petition booklets. *Alaskans for Better Elections II*, 2019 WL 6499035, at *5. We affirmed the superior court's ruling. *Alaskans for Better Elections I*, 465 P.3d at 479.

The superior court denied Young's motion for summary judgment and granted the State's cross-motion. The court first ruled that Young lacked standing to sue. It concluded that Young lacked interest-injury standing[11] because his generalized concerns, reflecting disagreement with the State's decision, did "not reflect an injury to Young." The court concluded that Young lacked citizen-taxpayer standing[12] because the case did not "involv[e] great societal impact"; the State's stipulation was an isolated decision rather than an established practice, and it had no "ongoing or lasting effect" — not even on the 19AKBE initiative itself.[13] And the court said that even if Young had raised "a matter of public significance," it would deny citizen-taxpayer standing on prudential grounds, expressing "concern[] that Young is seeking an advisory opinion."

The superior court also decided that the case was moot and no exception to the mootness doctrine applied. Acknowledging that the initiative process's compressed timeline might frustrate judicial review, the court nevertheless reasoned that

---

[11] "To establish interest-injury standing, a litigant must show: (1) 'a "sufficient personal stake" in the outcome of the controversy' and (2) 'an interest which is adversely affected by the complained-of conduct.'" *PLC, LLC v. State*, 484 P.3d 572, 578 (Alaska 2021) (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009)).

[12] "To establish citizen-taxpayer standing, a litigant must show that the issues raised are of public significance and that it is an appropriate litigant to seek adjudication of those issues." *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010).

[13] The court also questioned whether Young was truly an "appropriate plaintiff given that he ha[d] not voiced any opposition to the underlying petition in the 19AKBE litigation and there [were] likely others more directly affected by the possibility of having petition booklets printed in advance of certification." But the court's "standing determination [did] not turn on an analysis of this factor" but rather on the first prong of the citizen-taxpayer test: the case's "public signifance."

"given the unlikelihood of this issue repeating itself, combined with the unique [factual] circumstances," the procedural constitutional issue raised by Young did "not justify overriding the mootness doctrine" under the public interest exception. The court declined to apply the voluntary cessation exception to the mootness doctrine because the stipulation was a deviation from the State's usual practice.

Young appeals.

## III. STANDARD OF REVIEW

"We resolve issues of standing and mootness using our independent judgment because, as matters of judicial policy, these are questions of law."[14] The ultimate "determination of whether to review a moot question" under an exception to the mootness doctrine "is left to the discretion of the court."[15]

## IV. DISCUSSION

The superior court may provide declaratory relief "[i]n case of an actual controversy."[16] This statutory phrase "encompasses considerations of standing, mootness, and ripeness."[17] Courts should therefore "decide cases only when a plaintiff

---

[14]    *Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 366 (Alaska 2014) (quoting *Ahtna Tene Nené v. State, Dep't of Fish & Game*, 288 P.3d 452, 457 (Alaska 2012)).

[15]    *Id.* at 367 (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995)); *see also Ulmer v. Alaska Rest. & Beverage Ass'n (ARBA)*, 33 P.3d 773, 778 (Alaska 2001) (declining to apply the public interest exception).

[16]    AS 22.10.020(g).

[17]    *Alaska Com. Fishermen's Mem'l in Juneau v. City & Borough of Juneau*, 357 P.3d 1172, 1175 (Alaska 2015) (quoting *State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 368 (Alaska 2009)).

has standing to sue and the case is ripe and not moot."[18]  A claim becomes moot when "it is no longer a present, live controversy."[19]  "Mootness is particularly important in a case seeking a declaratory judgment," such as this one, "because there is an added risk that the party is seeking an advisory opinion."[20]

Young concedes that this case is moot, but he argues that two exceptions to the mootness doctrine apply:  the public interest exception and the voluntary cessation exception.  We hold that neither exception required the superior court to hear this moot case, and we affirm the judgment on mootness grounds.  We therefore do not reach the question of Young's standing.

### A.    The Superior Court Did Not Abuse Its Discretion By Declining To Apply The Public Interest Exception To Mootness.

Under the public interest exception, a court may choose to address moot issues after considering three factors:  "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[21]  "None of these factors is dispositive; each is an aspect of the question of whether the public interest dictates that a court review a moot issue.  Ultimately, the determination of whether to

---

[18]     *Id.* at 1176 (quoting *Am. Civil Liberties Union of Alaska*, 204 P.3d at 368).

[19]     *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002).

[20]     *Sitkans for Responsible Gov't v. City & Borough of Sitka*, 274 P.3d 486, 491 (Alaska 2012) (quoting *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1195).

[21]     *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1168 (quoting *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1196).

review a moot question is left to the discretion of the court."[22]

Courts first consider "whether the disputed issues are capable of repetition."[23] "[W]e have refused to apply the public interest exception to unusual factual circumstances that were unlikely to repeat themselves,"[24] such as when a candidate nominated in a primary election changed parties in the middle of his general election campaign.[25] In this case, as the superior court noted, while the issue is technically "capable of repetition, it is unlikely to repeat." The director's affidavit confirms that the Division's "historical practice . . . [is] not to enter into any court-approved stipulated agreements to print petition booklets in advance of a final court decision on the merits," and the Division specifically disavowed any plans to do it again. While these statements are self-serving, recurrence of the precise issue disputed here does seem unlikely; it would require the lieutenant governor to deny certification of an initiative application, the sponsors to challenge the denial, the State to agree to prepare the booklets pending a decision on the merits — contrary to its historical practice — and the supervising court to approve the stipulation. The unlikelihood of repetition means that this factor weighs against applying the public interest exception.

The second factor is "whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues."[26] The context of the issue here — a court-approved stipulation regarding an election — facilitates judicial review: the action

---

[22] *Ulmer v. Alaska Rest. & Beverage Ass'n (ARBA)*, 33 P.3d 773, 778 (Alaska 2001) (quoting *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1196).

[23] *Id.* at 777-78.

[24] *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1168.

[25] *O'Callaghan v. State*, 920 P.2d 1387, 1388 (Alaska 1996).

[26] *Ulmer*, 33 P.3d at 778.

is taken publicly and on the record, and a judge familiar with the case is available to make an expedited ruling if an intervening party objects. The deadlines of the initiative process are not inherently so restrictive as to thwart judicial review, especially given our courts' practice of dealing with elections issues expeditiously. What made this case moot was not the statutory or constitutional deadlines for initiatives, but rather the State's decision to cease the challenged conduct a day after Young filed suit. Applying the mootness doctrine will repeatedly circumvent judicial review of this issue only if the State continues to withdraw early distribution stipulations as soon as parties sue to challenge them. Nothing in the record suggests the State will do this; the evidence suggests only that the State has never before entered into this kind of stipulation, let alone promptly withdrawn from it. This factor thus also weighs against applying the public interest exception.

The third factor is "whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[27] The superior court concluded that the issue here did not justify overriding the mootness doctrine "given the unlikelihood of this issue repeating itself, combined with the unique circumstances of the facts related to this case."[28]

In support of his argument that the issue is important to the public interest, Young cites our earlier observation that the public interest has justified overriding the mootness doctrine in cases involving "situations, otherwise moot, where the legal power

---

[27]    *Id.*

[28]    *See Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 368 (Alaska 2014) ("[W]e cannot disassociate our view of the third factor in this case from our analysis of the first, in which we concluded that the factual scenario before us is unlikely to be repeated . . . .").

of public officials was in question."[29] The issues in those cases included whether the Alaska Constitution forbade the governor's suit against the Legislative Council,[30] whether an administrative agency had "jurisdiction to decide whether an issue [was] arbitrable,"[31] and whether a commissioner had the authority to allow fishing in waters generally closed to fishing.[32] But as the State points out, in determining the applicability of this factor a mere "allegation that a government official acted unlawfully is not dispositive." In *Hayes v. Charney*, for example, we concluded that whether the Legislative Council's withdrawal of funds violated article IX, section 13 of the Alaska Constitution was not "of such significant public interest as to warrant our review despite its mootness," because the issue could readily be resolved by the legislature itself.[33]

Whether a court-approved stipulation to the State's pre-certification distribution of initiative signature booklets violates a constitutionally mandated timeline is certainly of some importance to the public interest. But in contrast to the decisions

---

[29]    *Copeland v. Ballard*, 210 P.3d 1197, 1203 (Alaska 2009) (quoting *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1169).

[30]    *Legis. Council v. Knowles*, 988 P.2d 604, 606 (Alaska 1999) (describing the issue as of "great public importance" because it went "to the heart of the delicate constitutional balance between the powers of two coordinate branches of government").

[31]    *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1169 ("As this case raises a question of the power of government officials, the issues are sufficiently important to the public interest to merit consideration.").

[32]    *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995) (noting that, in addition to the issue being capable of repetition yet evading review, "the scope of the Commissioner's power is an issue of public interest").

[33]    693 P.2d 831, 835 (Alaska 1985).

cited by Young,[34] the unlawful act alleged here never actually happened. That the stipulation was withdrawn before implementation, with no lasting effects, significantly reduces the public importance of deciding whether the State's stipulated commitment would have been constitutional. This combination of circumstances also increases the danger that deciding the issue on the merits would constitute an advisory opinion on a hypothetical set of facts. As in *Marcy v. Matanuska-Susitna Borough*, "[w]e believe it best to wait for a . . . challenge grounded on real facts so that our decision is properly focused and avoids any unintended consequences."[35] The public importance of this issue does not justify applying the public interest exception in this case.

In sum, while the issue Young raises is technically capable of repetition, future incarnations of the issue are unlikely to be rendered moot before any court can review them; what mooted the controversy here was the State's cessation of the offending conduct as soon as Young filed suit, not something inherent in the legal issue of pre-certification distribution of initiative pamphlets. And because the allegedly unconstitutional stipulation was withdrawn before implementation and had no lingering effects, the public importance of the issue is at its minimum, while the danger of issuing an advisory opinion based on hypothetical facts is at its maximum. We therefore see no abuse of discretion in the superior court's decision not to apply the public interest exception to the mootness doctrine.

---

[34] *See Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1166-67; *Legis. Council*, 988 P.2d at 605.

[35] 433 P.3d 1056, 1063 (Alaska 2018) ("Reviewing [plaintiff]'s constitutional challenges to the Proposed Initiative to avoid litigating similar initiatives is not so important to the public interest as to justify overriding the mootness doctrine, because those unknown initiatives simply are not before us.").

**B.** **The Superior Court Did Not Abuse Its Discretion By Declining To Apply The Voluntary Cessation Exception To Mootness.**

Under the voluntary cessation exception, as it originated in the federal courts, "a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice."[36] Whether a defendant's voluntary cessation of challenged conduct moots a case depends on whether "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[37] When the voluntary cessation exception is at issue, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."[38]

Young contends that the voluntary cessation exception applies to this case. The State responds by arguing that federal courts "typically apply the voluntary cessation doctrine to cases and scenarios involving established procedures, . . . laws, and practices." The State portrays the current case as involving merely "a single court-approved strategic" litigation decision deviating from the State's "longstanding practice" of not entering into this type of stipulation. The State asks us not to "rigidly import[]" the voluntary cessation doctrine into cases like this one involving challenges to a one-off action rather than a practice.

---

[36] *Slade v. State, Dep't of Transp. & Pub. Facilities*, 336 P.3d 699, 700 (Alaska 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

[37] *Id.* (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189).

[38] *Id.* (alteration in original) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189.

It is true that the typical federal case applying the voluntary cessation exception involves a challenge to a policy, procedure, or pattern of behavior.[39] And when we first applied the voluntary cessation exception in *Slade v. State, Department of Transportation & Public Facilities*, we characterized it as applying to "a defendant's voluntary cessation of a challenged *practice*."[40] Our subsequent cases applying the voluntary cessation exception also involved challenges to policies or practices.[41]

Young claims that "federal courts routinely apply the voluntary cessation exception to cases involving" isolated government actions, but the one case he cites to illustrate this "routine" is readily distinguishable.[42] In *Olagues v. Russoniello*, the Ninth Circuit applied the exception to a U.S. Attorney's voluntary cessation of an allegedly unconstitutional investigation after interviews with foreign-born voters yielded no

---

[39] *See Friends of the Earth, Inc.*, 528 U.S. at 176, 189, 193-94 (applying voluntary cessation exception to defendant's challenged repeated violations of pollutant discharge permit terms); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (applying voluntary cessation exception to save challenge to subsequently-revised ordinance); *Porter v. Clarke*, 852 F.3d 358, 360 (4th Cir. 2017) (applying voluntary cessation exception to challenged policies governing conditions of confinement for prisoners on Virginia's death row).

[40] 336 P.3d at 700 (emphasis added) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189.

[41] *Black v. Whitestone Est. Condo. Homeowners' Ass'n*, 446 P.3d 786, 788, 794 (Alaska 2019) (applying voluntary cessation exception when defendants had withheld dues for "several years" before starting to retroactively pay); *Leahy v. Conant*, 436 P.3d 1039, 1048-49 n.46 (Alaska 2019) (concluding that voluntary cessation exception did not apply because Department of Corrections had unambiguously revised challenged policy on prisoner mail); *Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 225 n.106 (Alaska 2016) (applying voluntary cessation exception even though defendant "had already changed its challenged practices").

[42] *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985).

evidence of an illegal voter registration conspiracy.[43] The allegedly illegal investigation at issue in *Olagues* actually happened; the plaintiffs claimed that it had already violated their statutory and constitutional rights.[44] Here, on the other hand, the allegedly unconstitutional action — the pre-certification distribution of signature booklets — never occurred. The State agreed to take the action but then swiftly retracted its agreement.

The Court of Appeals for the D.C. Circuit has specifically held that challenges to isolated government actions may be subject to the voluntary cessation exception to mootness.[45] A number of other federal courts have applied the test to isolated actions, some concluding that the claims were justiciable under the exception.[46] Others applied the test but still dismissed the claims as moot, concluding that the

---

[43] *Id.* at 796.

[44] *Id.* at 793-94.

[45] *J. T. v. District of Columbia*, 983 F.3d 516, 522-23 (D.C. Cir. 2020) (confirming that voluntary cessation test applies to attacks on "isolated agency action[s]," but holding voluntary cessation exception irrelevant because defendant had "not voluntarily cease[d] the challenged conduct"); *see also Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) ("[A] claim for declaratory relief will not be moot even if the 'plaintiff has made no challenge to [an] ongoing underlying policy, but merely attacks an isolated agency action,' so long as 'the specific claim . . . falls within the voluntary cessation doctrine.' " (quoting *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994))).

[46] *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 307-08 (1897) (holding challenge to allegedly collusive association agreement was justiciable despite association's voluntary dissolution, as members still claimed agreement was legal); *United States v. Virgin Islands*, 363 F.3d 276, 285-86 (3d Cir. 2004) (applying voluntary cessation exception to defendant's termination of challenged contract, citing defendant's "continued defense of the validity and soundness of the contract"); *Olagues*, 770 F.2d at 796 (holding challenge to ended investigation was not moot, citing defendant's insistence his conduct was legal).

defendants had successfully met their burden of showing that there was no reasonable expectation of recurrence.[47]

Accordingly, federal courts are "more likely to find that the challenged behavior is not reasonably likely to recur where it constituted an isolated incident, was unintentional, or was at least engaged in reluctantly."[48] The Eleventh Circuit explicitly weighs "whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice," as one of three factors for determining whether a defendant's voluntary cessation has mooted a case.[49] The Seventh and Ninth Circuits

---

[47] *See Los Angeles County v. Davis*, 440 U.S. 625, 631-32 (1979) (involving never-implemented proposal to use results of invalid test in hiring process); *Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161-62 (3d Cir. 2019) (involving "one-off incident" of religious pressure from state security guard); *Kennedy v. Omega Gas & Oil, LLC*, 748 F. App'x 886, 888, 891 (11th Cir. 2018) (involving gas station's noncompliance with disability access statute); *Troiano v. Supervisor of Elections in Palm Beach Cty*, 382 F.3d 1276, 1285 (11th Cir. 2004) (applying voluntary cessation test to official's challenged deviation from otherwise consistent policy about election equipment); *DiGiore v. Ryan*, 172 F.3d 454, 466 (7th Cir. 1999) (involving challenged "isolated incident" of noncompliance with Fair Labor Standards Act), *overruled on other grounds by Whetsel v. Network Prop. Servs., LLC*, 246 F.3d 897 (7th Cir. 2001).

[48] *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007).

[49] *Id.* The other two factors considered by the Eleventh Circuit are "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and . . . whether, in ceasing the conduct, the defendant has acknowledged liability" or "wrongdoing." *Id.* at 1184, 1187. *See also Troiano*, 382 F.3d at 1285 (concluding official's consistent practice of *not* engaging in challenged conduct constituted evidence that deviation would not recur).

have also considered whether the challenged conduct was an isolated incident or part of a pattern of behavior.[50]

Federal courts applying the voluntary cessation doctrine have also considered whether any effects of the challenged conduct remain.[51] In one such case, *Los Angeles County v. Davis*, the United States Supreme Court held that a challenge to a once-proposed and long-abandoned hiring plan was moot, in part because the plan was never implemented and thus unlikely to have "had any discriminatory effects to redress."[52] Young does not point to any enduring consequences of the State's challenged action in this case; the only remaining repercussion of the withdrawn stipulation is Young's continued attack on it.

We do not hold that the voluntary cessation exception can never apply to a defendant's isolated action. But a number of circumstances weigh against applying the exception here. The agreement challenged by Young was not only a swiftly abandoned litigation concession that arose under unusual circumstances, it was also inconsistent

---

[50] *DiGiore*, 172 F.3d at 466 (applying voluntary cessation doctrine but concluding case was moot in part because challenged conduct was "isolated incident" rather than practice); *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1175 (9th Cir. 2009) (applying voluntary cessation exception in part because "[w]hat the district court initially classified as an 'isolated instance of untimeliness' has since bloomed into a consistent pattern of delay"); *cf. Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777-78, 780 (D.C. Cir. 2018) (recognizing Freedom of Information Act-specific variation on voluntary cessation exception that requires plaintiff to allege pattern rather than single instance of noncompliance).

[51] *See Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Porup v. Cent. Intel. Agency*, 997 F.3d 1224, 1233 (D.C. Cir. 2021); *Luckie v. Env't Prot. Agency*, 752 F.2d 454, 459 (9th Cir. 1985).

[52] 440 U.S. at 633.

with the State's historical practices, and the State says it has no plans to repeat it.[53] Furthermore, the allegedly unconstitutional action was never actually taken, and the withdrawn agreement had no lingering effects.[54] On these facts, the superior court acted well within its discretion in deciding that the voluntary cessation exception did not save Young's claim from mootness.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[53] *See Digiore*, 172 F.3d at 466; *see also Rosebrock v. Mathis*, 745 F.3d 963, 973 (9th Cir. 2014) (noting that defendant's re-commitment to general policy "makes it particularly unlikely that [defendant] will change its policy in the future" when ruling that challenge to deviation from policy was moot).

[54] *See Davis*, 440 U.S. at 631 (ruling challenge to 1972 hiring plan was moot in part because since the plan "was never carried out," it was very unlikely that it "had any discriminatory effects to redress").