**EARTH MOVERS OF FAIRBANKS, INC., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.**

**No. S–4275.**

Supreme Court of Alaska.

Jan. 24, 1992.

---

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, for appellant.

Mason Damrau, Asst. Atty. Gen., Fairbanks, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### INTRODUCTION

Earth Movers of Fairbanks, Inc. ("EMF") sued the Department of Transportation and Public Facilities ("DOT/PF") for breach of contract and for declaratory relief. The superior court upheld the conclusion of the DOT/PF Appeals Officer that DOT/PF had not breached the contract. The superior court also ruled that declaratory relief was inappropriate. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

EMF and DOT/PF entered a $11.5 million contract on August 31, 1987, for the construction of the Geist Road Extension. The contract required that the work be done in accordance with "the Plans and Specifications." [1]

In early June 1988, after EMF had begun work, DOT/PF identified a need for tempo-

---

1. According to both parties, this meant that the following documents were incorporated by reference into the contract: the 1981 Standard Specifications for Highway Construction, the Standard Modifications to the Standard Specifications and the Special Provisions.

rary signs where construction had closed Phillips Field Road at Nome Drive.[2] DOT/PF requested that EMF submit an estimate for the work. EMF responded that the work would cost an additional $1675.00. DOT/PF calculated that it could perform the work for less than $500 and rejected EMF's proposal. Using its own personnel and existing signs, DOT/PF completed the project in less than 12 man hours.

Based on EMF's contention that the signing constituted extra work for which it had the exclusive contractual right to perform, EMF submitted a claim for $530.[3] The Contracting Officer found that DOT/PF had authority to remedy the sign problem and rejected EMF's claim for compensation. EMF appealed the decision to the Acting Regional Director, who upheld the Contracting Officer.

EMF then brought an action in superior court for review of the agency's decision and for a declaratory judgment regarding the liability for potential negligence claims arising from DOT/PF's sign placement. The superior court agreed with the Appeals Officer that EMF had no exclusive right under the contract to extra work. The court also concluded that this was not an appropriate time to rule on potential liability. EMF appeals both decisions.

## DISCUSSION

### A. Breach of Contract

■■■■ EMF claims it has an exclusive contractual right to perform and receive compensation for any extra work. DOT/PF argues that under the contract, DOT/PF could require EMF to do the extra work but had no obligation to award extra work to EMF. We agree with DOT/PF and affirm the superior court.[4]

■■ Section 104–1.04, entitled "Extra Work,"[5] which appears in the Standard Specifications states that

[t]he Contractor shall perform work for which there is no price included in the contract wherever it is deemed necessary or desirable in order to complete fully the project. Such work shall be performed in accordance with the specifications and as directed, and will be paid for as provided under Subsection 109–1.04 and 109–1.05.

Based on this provision alone, it might be reasonable for EMF to expect to perform and be compensated for all extra work. However, EMF's interpretation is not reasonable in the context of other contract provisions.[6]

Standard Specification 105–1.07 provides in part:

**Cooperation Between Contractors.** The Department reserves the right at any time to contract for and perform other or additional work on or near the work covered by the contract.

When separate contracts are let within the limits of any project, or projects each Contractor shall conduct his work so as not to interfere with or hinder the work being performed by other Contractors. Contractors working on the same project shall cooperate with each other. He shall join his work with that of the others in an acceptable manner and shall perform it in proper sequence to that of others.

The first sentence of this section clearly reserves the State's right to perform additional work.

---

2. Since the road closure was not anticipated, the placement of signs at that location was not specified in the written contract.

3. Of the $530, $465 represented anticipated mark-up and $65 was for engineering time spent developing the proposed.

4. Since this is a question of law which does not require agency expertise, we substitute our judgment for that of the agency's. *Earth Resources Co. of Alaska v. State, Dep't of Rev.,* 665 P.2d 960, 964–65 (Alaska 1983).

5. Both parties agree the signing constitutes extra work.

6. In interpreting a contract, one factor we look at is "the language of the contract as a whole." *Craig Taylor Equip. Co. v. Pettibone Corp.,* 659 P.2d 594, 597 (Alaska 1983).

**718**

Moreover, paragraph VI of the Construction Contract provides in part:

[i]t is distinctly understood and agreed that no claim for additional work or materials, done or furnished by the Contractor and not specifically herein provided for, will be allowed by the Contracting Officer, nor shall the Contractor do any work or furnish any material not covered by this Contract, unless such work is ordered in writing by the Contracting Officer.

This paragraph indicates that DOT/PF is only liable to compensate EMF for work performed pursuant to DOT/PF's written authorization. In the present case, DOT/PF never authorized EMF to perform the signing.

In sum, the language of the contract as a whole indicates DOT/PF's intent to retain control over any work not specifically covered by the contract. As for "the objects sought to be accomplished by the contract," a factor identified in *Craig Taylor Equip. Co. v. Pettibone Corp.*, 659 P.2d 594, 597 (Alaska 1983), as relevant to contract interpretation, DOT/PF was trying to have a road built in the best interest of the State. There is a credible public policy interest in the Department's efforts to minimize the cost of that construction. We therefore hold that EMF is not entitled to additional compensation.

B. Liability

 EMF sought a declaratory judgment regarding the liability for potential negligence claims arising from DOT/PF's sign placement. However, the superior court correctly ruled that consideration of the liability issue was inappropriate in this litigation.

■ There is no actual case or controversy. According to DOT/PF, there have been no negligence claims arising from the signing. Also, two years have elapsed since the signs were removed, extinguishing all potential claims under the statute of limitations. "Advisory opinions" are to be avoided. *Gieffels v. State*, 552 P.2d 661, 664-65 (Alaska 1976). While the court may address an issue which is technically moot

in light of "the recurring nature and importance of the issue," *Central Constr. Co. v. Home Indem. Co.*, 794 P.2d 595, 597 (Alaska 1990), there is no indication that this is such an issue.

CONCLUSION

The contract did not provide EMF with an exclusive right to do any work necessitated by the construction. This litigation is not the appropriate setting for the court to rule on liability. The judgment is AFFIRMED.