**CITIZENS FOR IMPLEMENTING MEDICAL MARIJUANA and Al Anders, Appellants,**

v.

**MUNICIPALITY OF ANCHORAGE, and Greg Moyer, Clerk, Appellees.**

**No. S–11345.**

Supreme Court of Alaska.

Feb. 24, 2006.

---

26. Op. at 893.

28. *Fremgen,* 914 P.2d at 1245.

Kenneth P. Jacobus and Karen Bretz, Anchorage, for Appellants.

Joseph D. O'Connell, Assistant Municipal Attorney, and Frederick H. Boness, Municipal Attorney, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Citizens for Implementing Medical Marijuana (CIMM) sued the Municipality of Anchorage and Municipal Clerk Greg Moyer after Clerk Moyer refused to certify CIMM's citizen initiative petition and submit its ballot proposition to municipal voters. Because we conclude that the petition is confusing and misleading and therefore legally insufficient, we affirm the superior court's summary judgment that held that the clerk properly denied certification.

## II. FACTS AND PROCEEDINGS

On April 10, 2002, Citizens for Implementing Medical Marijuana submitted an initiative petition to Greg Moyer, Municipal Clerk for the Municipality of Anchorage, seeking placement of CIMM's ballot proposition on the next citywide ballot. The petition proposed an initiative to legalize marijuana paraphernalia and referred to, among other things, the Alaska Statute allowing medical use of marijuana and the Alaska Constitution's guarantee of the right to privacy. The petition stated:

> An Initiative Petition Allowing Those Items Used with Marijuana Legal as Medicine or a Right To Privacy
> WHEREAS, in 1998, the Alaska voters overwhelmingly passed an initiative to allow the use of marijuana as medicine (Nov.

3, 1998—Bill allowing medical use of Marijuana [97PSDM], 131,586 voting yes versus 92,701 voting no);

WHEREAS, in 1975, the Alaska Supreme Court unanimously ruled that the Alaska constitutional right to privacy, Article I, Section 22, included the right to use marijuana in one's home, (*Ravin v. State*);

WHEREAS, in 1993, the Alaska Superior Court ruled that the Alaska Constitution cannot be amended by initiative and that the right to privacy still included the right to use marijuana (*McNeil v. State*);

WHEREAS it is in the best interests of the residents of the Municipality of Anchorage to use law-enforcement resources to pursue violent crime and to combat the growing threat of terrorism;

THEREFORE, We, the undersigned registered voters of the Municipality of Anchorage, direct the Municipal Assembly to put the following charter amendment before the voters at the next regular municipal election:

THE PROPOSITION: Shall Article II of the Municipal Charter be amended to add the following section:

> (14) The right to buy, sell, or possess those items which could be used to consume, grow or process marijuana for medicine, or as is in accord with the right to privacy protected by Article I, Section 22 of the Alaska Constitution.[1]

Clerk Moyer rejected the petition on May 13, 2002 after finding that it lacked the requisite number of valid signatures. After CIMM demonstrated that it had obtained the necessary number of signatures, Clerk Moyer asked the municipal attorney to review the petition's legal sufficiency. The municipal attorney concluded that it was legally insufficient, reasoning that the first whereas clause contained a false and misleading statement of law,[2] and that the proposition would violate federal and state law by authorizing the sale and purchase of marijuana seeds and plants. Clerk Moyer therefore refused to certify the petition and place the initiative on the ballot.

CIMM and Al Anders (collectively CIMM) sued the Municipality of Anchorage and Clerk Moyer, and asked the superior court to declare that the petition correctly stated the current law per *Ravin v. State*,[3] and to compel Clerk Moyer to certify the petition and place the initiative on the ballot. The parties cross-moved for summary judgment. The superior court held that the title of the petition, two of its whereas clauses, and the proposition were confusing and misleading, and therefore concluded that Clerk Moyer had properly rejected the petition as legally insufficient. The court consequently denied CIMM's motion for partial summary judgment, granted the municipality's cross-motion for summary judgment, and entered judgment for the defendants.

CIMM appeals.

---

1. The superior court's opinion substituted "possess" for "process" in the "Proposition" section of the petition. Both parties had used "process" in documents before the superior court, but use "possess" in their appellate briefs. Because the record reveals no reason for this change, we will use the original word, "process." We would reach the same result whether "process" or "possess" were the correct word.

2. The Anchorage Municipal Code (AMC) provision in effect at times relevant to this case required that the petition summary "describe" the proposed law. AMC 2.50.030(A) (superseded 2002). In *Faipeas v. Municipality of Anchorage*, 860 P.2d 1214, 1219 (Alaska 1993), we interpreted this provision to require that the petition be "truthful, impartial, and comprehensible."

3. *Ravin v. State*, 537 P.2d 494 (Alaska 1975). The *Ravin* court held that the right to privacy in article I, section 22 of the Alaska Constitution encompasses "the possession and ingestion of substances such as marijuana in a purely personal, non-commercial context in the home unless the state can meet its substantial burden and show that proscription of possession of marijuana in the home is supportable by achievement of a legitimate state interest." *Id.* at 504. The court concluded that "no adequate justification for the state's intrusion into the citizen's right to privacy by its prohibition of possession of marijuana by an adult for personal consumption in the home has been shown." *Id.* at 511. Therefore "possession of marijuana by adults at home for personal use is constitutionally protected," *id.*, even though "there is not a *fundamental* constitutional right to possess or ingest marijuana in Alaska." *Id.* at 502 (emphasis added).

Because our disposition of this case does not require us to decide whether the second whereas clause accurately states *Ravin's* holding, we decline to express an opinion about it.

## III. DISCUSSION

### A. Standard of Review

 We review de novo the superior court's determination that the petition was legally insufficient.[4] The burden is on the municipality, as the party challenging the petition's legal sufficiency, "to demonstrate that it is biased or misleading."[5] "[W]hen reviewing initiative challenges, we liberally construe constitutional and statutory provisions that apply to the initiative process."[6]

### B. The Petition Is Confusing and Misleading.

#### 1. Petitions must be comprehensible and truthful.

At times relevant to this appeal, the Anchorage Municipal Code required petition summaries to "describe" the law proposed by the petition.[7] We have held that this provision requires the description to be "truthful, impartial, and comprehensible."[8] This requirement stems from the "public interest in informed lawmaking"[9] and guides our inquiry here. "[O]ur main concern should be that all matters (legislative enactments, initiative petitions and even proposed resolutions) should be presented *clearly* and honestly to the people of Alaska."[10]

#### 2. We review the legal sufficiency of the entire petition, not just the proposition.

 CIMM argues that because the whereas clauses would not have been placed on the ballot if the petition had been certified, our review should be limited to whether the proposition itself would have confused or misled voters.[11] This argument ignores the important screening function that the signature requirement plays in the initiative process.[12]

 The signature-gathering requirement ensures that only propositions with significant public support are included on the ballot.[13] But when a petition, including its title and summary, is confusing or misleading, petition signers may not understand what they are signing. Signatures on a confusing or misleading petition therefore may or may not indicate support for the measure. Under such circumstances, it cannot be known

---

4. *See Cabana v. Kenai Peninsula Borough,* 50 P.3d 798, 801 (Alaska 2002) (noting that this court reviews grants of summary judgment de novo).

5. *See Faipeas v. Municipality of Anchorage,* 860 P.2d 1214, 1219 (Alaska 1993) (interpreting AMC 2.50.030 (superseded 2002)) (quoting *Burgess v. Alaska Lieutenant Governor Terry Miller,* 654 P.2d 273, 276 (Alaska 1982) (affirming superior court's holding that Lieutenant Governor's summary of initiative petition was not misleading)).

6. *Kodiak Island Borough v. Mahoney,* 71 P.3d 896, 898 (Alaska 2003).

7. AMC 2.50.030(A) (superseded 2002). Eight months after CIMM submitted this petition, the Anchorage Assembly amended the Municipal Code to provide for review of applications for a petition before signatures may be gathered. Anchorage Ordinance No.2002–162 (Dec. 17, 2002). Current version at AMC 2.50.010 *et seq.* The Anchorage Municipal Code currently does not require the petition to "describe" the ordinance or resolution sought by the petition, but requires that it "set out verbatim the ordinance or resolution sought to be enacted or repealed by the petition" and "meet constitutional, charter and other legal requirements or restrictions." AMC 2.50.020(B)(3)(a) and (c).

8. *Faipeas,* 860 P.2d at 1219 (interpreting AMC 2.50.030 (superseded 2002)).

9. *Id.* at 1221.

10. *Id.* (quoting *Yute Air Alaska, Inc. v. McAlpine,* 698 P.2d 1173, 1188 (Alaska 1985) (Moore, J., dissenting) (emphasis in original)).

11. If the petition had been certified and the proposition placed on the ballot, the ballot would have contained only (1) "an objectively stated, informative caption or title," (2) "the question posed by the proposition," and (3) the words "yes" and "no." AMC 28.40.010(D). The whereas clauses therefore would not have appeared on the ballot.

12. *Faipeas,* 860 P.2d at 1219 (noting the "signature-gathering requirement['s] ... important screening purpose").

13. *Id.* ("The signature gathering requirement is important because it eliminates the initiation of an expensive campaign process when there is insufficient public support for an initiative.") (quoting Cynthia L. Fountaine, note, *Lousy Lawmaking: Questioning The Desireabiliy and Constitutionality of Legislating by Initiative,* 61 S. CAL. L.REV. 735, 746 (1988)).

whether the signature-gathering requirement has served its screening function. Moreover, the municipality correctly points out that a "biased and partisan" title [14] was a factor in our determination that the citizens challenging the petition in *Faipeas v. Municipality of Anchorage* had shown a likelihood of success on the merits of their contention that the petition was legally insufficient.[15] Similarly, confusing and misleading titles and summaries are valid grounds for refusing to certify a petition.

### 3. The petition title is confusing.

■ The petition is entitled "An Initiative Allowing Those Items Used with Marijuana Legal as Medicine or a Right To Privacy." The superior court concluded that the title's literal meaning suggests that the proposition "would declare paraphernalia to be medicine (and therefore legal) and/or declare that paraphernalia *is* a right to privacy." (Emphasis in original.) This conclusion accurately reflects the title's grammatical difficulties. The superior court also noted, however, that the confusion engendered by the title, standing alone, might not render the petition legally insufficient.

■ CIMM correctly points out that we relax procedural and technical requirements for citizen initiatives because they are often drafted by non-lawyers.[16] Likewise, courts liberally construe constitutional and statutory requirements "so that 'the people (are) permitted to vote and express their will on the proposed legislation.'" [17] But confusing or misleading petitions frustrate the ability of voters to express their will. Contrary to

CIMM's contention, therefore, we are not required to interpret unclear language in the petition "in a manner which does not render it invalid."

The title's grammatical difficulties stem from its use of the term "marijuana." It appears only once in the title but serves several functions. Ordinarily, a word is used as only one part of speech each time it appears in a sentence. Here, "marijuana" is first used in the clause ("those items used with marijuana") that describes the objects that are the subject of the initiative. The superior court correctly characterized these objects as "paraphernalia," even though that word does not appear in the petition.[18] "Marijuana" also seems to be used to refer to the substance marijuana itself, because it seems to be modified by the phrase "legal as medicine or a right to privacy." This implies that the proposition would "allow" marijuana paraphernalia either when the marijuana with which the paraphernalia is associated is used in accordance with Alaska's medical marijuana statute [19] or when its use is protected by the right to privacy.[20]

It is therefore not obvious from the words of the title exactly what is intended. Persons considering whether to sign the petition could not reasonably be expected to engage in the grammatical analysis required to discover exactly what the title means. Nonetheless, we agree with the superior court that the title's puzzling grammatical deficiencies would not render the petition legally insufficient, absent any problems with the rest of the petition. The title at least conveys some sense of the initiative's purpose: to "allow"

14. *See Faipeas,* 860 P.2d at 1217 ("REFERENDUM PETITION TO REPEAL A 'SPECIAL HOMOSEXUAL ORDINANCE'").

15. *Faipeas v. Municipality of Anchorage,* 860 P.2d 1214, 1221 (Alaska 1993) (affirming preliminary injunction preventing proposition from appearing on ballot).

16. "Because petitions are often prepared by inexpert sponsors who nonetheless espouse worthy or popular causes, or both, courts are reluctant to invalidate them in cases of merely doubtful legality." *Yute Air Alaska, Inc. v. McAlpine,* 698 P.2d 1173, 1181 (Alaska 1985). "To that end all doubts as to all technical deficiencies or failure to comply with the exact letter of proce-

dure will be resolved in favor of the accomplishment of that purpose." *Id.* (internal quotation marks omitted).

17. *Boucher v. Engstrom,* 528 P.2d 456, 462 (Alaska 1974) (quoting *Cope v. Toronto,* 8 Utah 2d 255, 332 P.2d 977, 979 (1958)), *overruled in part on other grounds by McAlpine v. Univ. of Alaska,* 762 P.2d 81 (Alaska 1988).

18. *Cf.* AMC 8.35.010A (defining "drug paraphernalia").

19. *See* AS 17.37.010–.080.

20. *See supra* note 3.

items whose use is somehow related to marijuana. But readers confused by the rest of the petition could derive little guidance by referring back to the title for clarification. Most importantly, the title does not assist in understanding what conduct the proposition would protect. The title does not help resolve deficiencies discussed in Parts III.B.4 and III.B.5.

### 4. The text of the proposition itself is deficient because it does not explain whether it creates or abolishes rights.

■ The text of the proposed initiative reads:

Shall Article II of the Municipal Charter be amended to add the following section:

(14) The right to buy, sell, or possess those items which could be used to consume, grow or process marijuana for medicine, or as is in accord with the right to privacy protected by Article I, Section 22 of the Alaska Constitution.

Because the petition does not explain the context and purpose of Article II of the Anchorage Municipal Charter, it is unclear from the face of the proposition even whether it would create or abolish rights respecting marijuana paraphernalia. A reader would have to infer the effect of the proposition from other sources, such as the name of the group promoting the petition or possibly from other parts of the petition.

The uncertainty created by this lack of context violates the principle of informed lawmaking that underlies all petition requirements.[21] Because potential petition signers could not know with sufficient certainty what they were endorsing, the petition is legally insufficient.[22]

Although we do not have to decide the issue here, we note in passing that the text of the proposition might also be misleading in regards to its scope. The text may be read narrowly, thus suggesting that it would protect the acquisition, sale, or possession of items only when circumstances would support a belief that the items would be used with marijuana actually used in accordance with Alaska's medical marijuana statute or the right to privacy. Or the text may be read broadly, suggesting that it would protect the acquisition, sale, or possession of those types of items that conceivably could be used in connection with marijuana potentially usable in accordance with Alaska's medical marijuana statute or the right to privacy. Because this ambiguity in the text of the initiative might cause voters to sign the petition who would not sign if they perceived the broader possible reading, the text itself is potentially problematic. But we do not have to decide if the text is actually problematic given the petition's other deficiencies.

### 5. If the ballot proposition is given the interpretation CIMM advocates, the petition is misleading as to what conduct the proposition would protect.

■ At oral argument before us, CIMM's counsel asserted that the ballot proposition would create a right to buy, sell, or possess any item that could·be used in accordance with Alaska's medical marijuana statute or in accordance with *Ravin's* interpretation of the right to privacy, whether or not circumstances indicated that the marijuana would in fact be used in one of these legally protected contexts. CIMM's counsel likewise argued that it is "impossible to separate" people who use marijuana in accordance with the statute or the right to privacy from people whose association with marijuana is not protected by law, including people acting for commercial purposes. But CIMM's counsel also stated that the proposition would not protect purchases that were "clearly [for] commercial operation[s]," such as "five hundred grow lights."

**21.** *Faipeas,* 860 P.2d at 1221.

**22.** *Cf. In re Title, Ballot Title, and Submission Clause for Proposed Initiatives 2001–2002 # 21 and # 22 ("English Language Education"),* 44 P.3d 213, 219 (Colo.2002) (articulating policy that government drafter should "whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear").

It is not obvious that these latter two contentions are completely consistent. We nonetheless assume without deciding that CIMM's interpretation of the proposition is correct. But this means that the petition, which must "[d]escribe the ordinance or resolution sought," [23] is legally insufficient because the title is misleading as to the proposition's scope. As noted above, the petition is entitled "An Initiative Petition Allowing Those Items Used with Marijuana Legal as Medicine or a Right To Privacy."

CIMM argues that the title "states that the initiative proposes to legalize those items used with marijuana which is legal as medicine and those items used with marijuana which is legal under Alaskans' privacy rights." This is a fair reading of the title, but not the only fair reading. CIMM's interpretation of the title therefore suggests that to be protected, the paraphernalia would have to be used to grow, consume, or process marijuana only in instances in which the conduct is permitted by Alaska's medical marijuana statute or the right to privacy.

Given CIMM's own interpretation, therefore, the title does not accurately describe the conduct the proposition would protect. The title proposes legalization of marijuana paraphernalia in specific situations. But as we saw above, the proposition itself could be read to legalize possession and sale of marijuana paraphernalia in virtually all situations, even if it were not actually intended to be used, or is in fact not used, in accordance with Alaska's medical marijuana statute or the right to privacy. The title is therefore misleading and consequently legally insufficient.[24]

The proposition's scope is further obscured by the whereas clauses. They basically assert that (1) Alaska voters legalized the use of marijuana for medical purposes in a statewide initiative; (2) since 1975 Alaska's state constitutional right to privacy has included the right to possess marijuana in one's home; (3) Alaska's state constitutional right to privacy continues to include the right to possess

marijuana in one's home; and (4) law enforcement resources are best spent on combating violent crime and "the growing threat of terrorism." The first three whereas clauses therefore describe several circumstances in which marijuana possession and consumption are legal. But CIMM's interpretation of the proposition is not so limited, and would protect possession of marijuana paraphernalia even when the marijuana use is not protected by AS 17.37.010—.080 or by the right to privacy. The first three whereas clauses therefore fail to describe the proposition's full scope under CIMM's interpretation. And to the extent the clauses imply that the proposition should be given the narrow reading discussed above, they could encourage petition signatures by persons who would oppose the proposition if they gave it the broader reading.

On its face, the fourth whereas clause appears to justify the proposition's scope as it was interpreted by CIMM at oral argument before us. This clause invites a comparison between the value of using law enforcement resources to combat violent crime and terrorism and the value of other unspecified uses. The superior court correctly recognized that this clause is a statement of the drafters' political opinion "with which a voter may choose to agree or disagree." Read in the context of the title and other whereas clauses, the relevant comparison the fourth whereas clause invites is between (1) combating violent crime and terrorism, and (2) detecting and prosecuting protected users of marijuana for possessing paraphernalia. If this is not the comparison the drafters intended, the fourth whereas clause is meaningless in the context of the title and the other whereas clauses. Although this clause is not necessarily misleading, it does not cure the petition's other problems because it does not reveal whether the proposition is intended to protect the possession and sale of items that are not in fact used for purposes protected by AS 17.37.010—.080 or the right to privacy. This clause therefore cannot sup-

---

**23.** AMC 2.50.030(A) (superseded 2002).

**24.** *See Faipeas*, 860 P.2d at 1219 ("A description which is untruthful, misleading, or which is not complete enough to convey basic information as

to what the ordinance does, cannot be regarded as a legally adequate or sufficient description within the meaning of the ordinance.").

port legalizing paraphernalia beyond circumstances where the marijuana use is protected by AS 17.37.010—.080 or by *Ravin's* interpretation of the right to privacy.

Nor can we conclude that the use of "could be" in the text of the proposition is sufficient to signify the difference in scope between the title and the whereas clauses and the proposition itself. Under CIMM's reading of the proposition, the use of "could be" renders meaningless the limitations suggested by the title, the whereas clauses, and the second half of the proposition itself.[25]

## IV. CONCLUSION

For these reasons, the superior court's order granting summary judgment to the defendants is AFFIRMED.

25. The proposition reads:

 Shall Article II of the Municipal Charter be amended to add the following section:

 (14) The right to buy, sell, or possess those items which could be used to consume, grow or process marijuana *for medicine, or as is in accord with the right to privacy protected by Article I, Section 22 of the Alaska Constitution.*

 (Emphasis added.)