**SITKANS FOR RESPONSIBLE GOVERNMENT, Michael Litman, and Jeffery Farvour, Appellants,**

v.

**CITY & BOROUGH OF SITKA and Colleen Pellett, Municipal Clerk, Appellees.**

No. S–13394.

Supreme Court of Alaska.

April 20, 2012.

24. 262 P.3d 622 (Alaska 2011).

25. *Id.* at 623.

26. *Id.* at 624.

27. *Id.*

28. *Id.*

Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Appellants.

Theresa Hillhouse, Municipal Attorney, Sitka, for Appellee City & Borough of Sitka, Michael Gatti and Leila R. Kimbrell, Wohlforth, Johnson, Brecht, Cartledge & Brooking, Anchorage, for Appellee Colleen Pellett, Municipal Clerk.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

1.  The petition states:

CITY AND BOROUGH OF SITKA
ORDINANCE NO.2008–____
AN ORDINANCE OF THE CITY AND BOR-
OUGH OF SITKA, ALASKA

REPEALING AND/OR REENACTING POR-
TIONS OF TITLE 2 & TITLE 18 OF THE SIT-
KA GENERAL CODE TO REQUIRE THAT THE
SALE, LEASE OR DISPOSALS OF REAL
PROPERTY WITHIN SAWMILL COVE IN-
DUSTRIAL PARK BE CONSISTENT WITH
AND CONFORM TO THE PROPERTY DIS-
POSAL ORDINANCES CONTAINED IN TITLE
18, INCLUDING A PUBLIC VOTE, IF NECES-
SARY.

1.  *CLASSIFICATION.* This ordinance is of a permanent nature. Section 3 is intended to become a part of the Sitka General Code upon election certification.
2.  *PURPOSE.* The purpose of this ordinance is to require that the administration and disposals of tidelands, submerged land, and other real property in the Sawmill Cove Industrial Park take place and is governed by Title 18 of the Sitka General Code and, as necessary that disposals of property within the Sawmill Cove Industrial Park are subject to a public vote.

## OPINION

CARPENETI, Chief Justice.

## I.  INTRODUCTION

Citizens sought a ballot initiative eliminating the special regulations that govern real property transactions in a local economic development area. After the municipal clerk twice denied the petition for a ballot initiative, the sponsors sued for an order placing the initiative on the ballot. Finding the petition to be both contrary to existing law and misleading, the superior court upheld the municipal clerk's denial. The sponsors appealed. Because we conclude that the petition is neither contrary to existing law nor misleading, we reverse.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

#### 1.  The petition

On June 25, 2008, Jeffery Farvour filed a petition for a ballot initiative with the municipal clerk of the City and Borough of Sitka.[1] The initiative would change how Sitka manages Sawmill Cove Industrial Park (Sawmill Cove).

Sawmill Cove is the former site of the

3.  *ENACTMENT.* NOW, THEREFORE, BE IT ENACTED that Sitka General Code Section 2.38.080(a)(7) is repealed and reenacted to read as follows:
    7.  All land transactions shall be governed in accordance with Title 18 of Sitka General Code.
    BE IT FURTHER ENACTED that Sitka General Code Section 2.38.090 (Ord. 00–1568 § 4 (part), 2000.), pertaining to leasing powers is repealed.
    BE IT FURTHER ENACTED that Sitka General Code Section 18.12.010(B) is repealed and reenacted to read as follows:
    B.  Upon sale or disposal of real property valued over five hundred thousand dollars, or upon lease of real property, including tidelands, of a value of more than seven hundred fifty thousand dollars, the ordinance authorizing the sale, lease, or disposition shall provide that the ordinance be ratified by a majority of the qualified voters voting at a general or special election. Any such sale, lease, or disposition shall be revocable pending the outcome of the election.
4.  *EFFECTIVE DATE.* This ordinance shall become effective immediately on certification by the Assembly if the results of the election show that a majority of the qualified voters approved enactment.

Alaska Pulp Corporation mill.[2] Sitka acquired the site in 2000 to manage economic development.[3] According to the purpose statement of the municipal acquisition:

> Unlike other property owned by the municipality, [Sawmill Cove] was acquired ... for economic development and disposal. In general, the property will not be used for public improvements. It will be leased or sold to individuals and corporations to develop business opportunities and provide jobs. For that reason, it is important to enact a procedure for property management and disposal at the site which more closely corresponds to private sector disposals.[4]

Accordingly, Sitka manages the site through a Board of Directors (the Board), whose extensive control over the site includes the power to operate, develop, budget for, and regulate Sawmill Cove.[5] The Board may enter into contracts on behalf of Sitka,[6] and the Board may dispose of Sawmill Cove property.[7]

The Board's power to dispose of Sawmill Cove property is broader than the city's power to dispose of other property. In order to sell, lease, buy, or trade real property in Sawmill Cove, the Board needs only the support of the Sitka assembly, in the form of a resolution.[8] Short-term leases require only the municipal administrator's approval.[9] In contrast, Sitka is more limited regarding disposal of its other, non-Sawmill Cove properties. Before the assembly can sell other real property valued over $500,000 or enter into a lease valued over $750,000, the assembly must pass an ordinance and Sitka voters must ratify the action in an election.[10]

The petition giving rise to this case would eliminate the Board's broad authority to transact real property in Sawmill Cove, and would instead require those transactions to comply with the normal requirements for any Sitka municipal land transaction. To do this, the petition revokes the language in Sitka General Code 02.38.080(A)(7), which contains the special procedures for transacting Sawmill Cove property. Instead, that section would read: "All land transactions shall be governed in accordance with Title 18 of Sitka General Code." Title 18 contains the normal procedures for Sitka's municipal land transactions.[11] That means that Sawmill Cove would be governed by the normal requirement that voters ratify any high-value land transaction—sales over $500,000 or leases over $750,000.[12] The change to Title 18 would also eliminate the Board's ability to execute short—term leases with only the municipal administrator's approval; instead, assembly approval would be required.[13] Finally, the change would impact all land transactions—large or small, lease[14] or sale[15]—by removing the Board's authority to

---

**2.** *See* Sitka General Code (SGC) 02.38.080(A)(5) (2009) (noting conveyance agreement with Alaska Pulp Corporation).

**3.** Sitka Ordinance (SO) 00–1568 (2000).

**4.** *Id.*

**5.** SGC 02.38.080(A).

**6.** *Id.* at (A)(9).

**7.** *Id.* at (A)(7).

**8.** *Id.*

**9.** *Id.* at (A)(7)(a).

**10.** SGC 18.12.010(B).

**11.** *See* SGC 18.12.010.

**12.** *Id.* at (B).

**13.** *See supra* note 1. The third section of the ballot initiative (titled "Enactment") proposed eliminating the current SGC 02.38.080(A)(7)(a), which only requires administrative approval for short-term leases in Sawmill Cove, and replacing it with SGC 18.12.010, which would require authorization by ordinance of any lease, with certain minor exceptions.

**14.** *See supra* note 1. The third section of the ballot initiative proposed replacing the current SGC 02.38.080(A)(7), the section of the ordinance that allows the Board to administer and dispose of property (sometimes subject to assembly approval) with the procedures in SGC 18.12.010, which grants no authority to the Board and requires an ordinance for most transactions.

**15.** *See supra* note 1. The petition makes two other minor changes to the Sitka code, each removing language currently stating that Sawmill Cove is not subject to Title 18. The petition would repeal SGC 02.38.090 (clarifying that

initiate such actions and instead requiring municipal action.

## 2. Sitka's denial of the petition

Jeffery Farvour's June 25, 2008 petition identified Farvour and Michael Litman (the sponsors) as contacts for the petition, and sought approval to begin collecting signatures to qualify the petition for the October 7, 2008 election.[16] Sitka forwarded the petition to its outside counsel, which responded with many reasons to deny the petition. Although it is unclear how strong these reasons are,[17] the outside counsel found that the petition (1) is confusing and misleading; (2) appropriates a public asset; (3) relates to an administrative matter; (4) is inconsistent with existing code; (5) is inconsistent with the local planning process; (6) immediately affects public health, safety, and welfare; (7) does not provide an effective date; and (8) conflicts with a requirement for Department of Justice pre-clearance. Accordingly, Sitka Municipal Clerk Colleen Pellett denied the petition on July 10, 2008. Although her denial notice was cursory, she attached the more extensive memo from outside counsel.

On July 22, 2008, Litman submitted an amended petition on behalf of Sitkans for Responsible Government. A cover letter discussed the concerns listed in the July 10 denial, but the petition corrected only two minor problems.[18] Sitka again forwarded the petition to its outside counsel, which re-

sponded with a memorandum highlighting essentially the same issues as it had in the first petition. The municipal clerk denied this second petition on August 5, 2008, again including a memo from outside counsel.

## B. Proceedings

On August 8, 2008, the sponsors filed a complaint in superior court.[19] They sought an injunction directing the clerk to certify the initiative for inclusion in the regular municipal election and declaratory relief confirming the propriety of the initiative. Superior Court Judge David V. George granted a preliminary injunction against Sitka and ordered the clerk to provide the sponsors with signature booklets so that they could gather signatures, which was done. The superior court then held an expedited hearing on August 19 and, in an order issued August 27, the court denied the sponsors' request for relief.

In its subsequent written decision, the superior court denied the sponsors' motion for summary judgment and dismissed the sponsors' complaint. Based on two independent grounds, the superior court upheld the Sitka clerk's denial of the petition for a ballot initiative: the court held (1) the initiative is contrary to law and unenforceable, and (2) the initiative is misleading and confusing.[20] The sponsors now appeal both of these holdings. Sitka, in turn, contends the case is moot.

---

Sawmill Cove leases are pursuant to Title 2, chapter 38) and amend SGC 18.12.010(B) (currently exempting Sawmill Cove property from Title 18).

**16.** To qualify for the Sitka ballot, an initiative must be signed by at least as many people as constitute 20% of the total number of electors voting at the last regular annual election. Home Rule Charter of City and Borough of Sitka Art. 6.01 (2009).

**17.** For example, the paragraph alleging that the petition concerns an administrative matter contains no analysis. Several other arguments raised in the memo are also conclusory.

**18.** First, the new version stated that Sawmill Cove requirements would "be consistent with and conform to" Title 18, whereas the original petition had only stated "conform to." Second, the new petition corrected a typographical error

so that 18.12.010(B) would be repealed, not 18.38.080(B), which had been erroneously listed in the original petition.

**19.** Sitkans for Responsible Government was the lead plaintiff, but the superior court eventually dismissed the group for lack of standing.

**20.** The court found unsupported a third reason—that the initiative was illegally used to make an appropriation. And the court did not reach a fourth reason—that the initiative improperly concerns administrative action. We note that courts should rule on all the reasons given for rejecting citizen petitions. Piecemeal litigation and piecemeal appeals can delay and potentially thwart the ability of the people to initiate laws or to decide not to do so. Ruling on all the reasons given for rejecting citizen petitions will prevent citizens from having to return to the courthouse multiple times to secure a spot on the ballot for their initiatives.

## III. STANDARD OF REVIEW

■ We review a superior court's summary judgment decision de novo, drawing all inferences in favor of, and viewing the facts in the record in the light most favorable to, the non-moving party.[21] Mootness [22] and the legality of a ballot initiative [23] are both legal questions to which we also apply de novo review, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[24]

■ When reviewing initiatives, we construe them broadly so as to preserve them whenever possible.[25] We apply a deferential standard of review for challenges to the adequacy of a petition summary and "[t]hose attacking the summary bear the burden 'to demonstrate that it is biased or misleading.' "[26]

## IV. DISCUSSION

### A. The Issues On Appeal Are Not Moot.

■ Sitka contends this appeal is moot because the October 7, 2008 election has passed. Assuming the sponsors' request to be included on a ballot refers only to the October 2008 election, Sitka points out certification for a past election is impossible and the case is therefore moot. Further, regarding the sponsors' request for declaratory relief, Sitka asserts any relief upholding the petition's language would constitute an im-

proper advisory opinion for a hypothetical future petition. Again, this assumes the sponsors would have to file a new petition for an upcoming election. However, because Sitka has not actually demonstrated the sponsors would need to file a new petition, and because this case is rich with adversity, we do not find it to be moot.

■ We generally decline to address a moot claim—that is, a claim that "has lost its character as a present, live controversy." [27] A claim is moot if "the party bringing the action would not be entitled to any relief even if it prevails." [28] By contrast, justiciable controversies are marked by adversity between the parties: There must be a "definite and concrete" controversy touching the parties' legal relations, not simply "hypothetical or abstract" disputes.[29] "Mootness is particularly important in a case seeking a declaratory judgment because there is an added risk that the party is seeking an advisory opinion," [30] which we seek to avoid.[31]

Sitka relies on *Ulmer v. Alaska Restaurant & Beverage Ass'n,*[32] which concerned mootness in the context of a ballot initiative. There, the State appealed the superior court's decision that the lieutenant governor's petition summary was legally defective.[33] But the sponsors of the initiative had dropped out of the litigation,[34] and we were not convinced the sponsors could legally rein-

---

**21.** *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell,* 215 P.3d 1064, 1072 (Alaska 2009) (citing *Anchorage Citizens for Taxi Reform v. Municipality of Anchorage,* 151 P.3d 418, 422 (Alaska 2006)).

**22.** *Ulmer v. Alaska Rest. & Beverage Ass'n,* 33 P.3d 773, 776 (Alaska 2001).

**23.** *Pebble Ltd.,* 215 P.3d at 1072.

**24.** *Id.; Jacob v. State, Dep't of Health & Soc. Servs.,* 177 P.3d 1181, 1184 (Alaska 2008).

**25.** *Pebble Ltd.,* 215 P.3d at 1073 (citing *Anchorage Citizens for Taxi Reform,* 151 P.3d at 422).

**26.** *Id.* (citing *Alaskans for Efficient Gov't, Inc. v. State,* 52 P.3d 732, 735 (Alaska 2002)).

**27.** *Kodiak Seafood Processors Ass'n v. State,* 900 P.2d 1191, 1195 (Alaska 1995); *Ulmer,* 33 P.3d at 776.

**28.** *Ulmer,* 33 P.3d at 776 (internal quotation marks omitted).

**29.** *Kodiak Seafood Processors Ass'n,* 900 P.2d at 1195; *see also Ulmer,* 33 P.3d at 776 (stressing the adversity requirement).

**30.** *Kodiak Seafood Processors Ass'n,* 900 P.2d at 1195.

**31.** *Earth Movers of Fairbanks, Inc. v. State, Dep't of Transp. & Pub. Facilities,* 824 P.2d 715, 718 (Alaska 1992).

**32.** 33 P.3d 773 (Alaska 2001).

**33.** *Id.* at 774.

**34.** *Id.* at 776–77.

vigorate the petition if it were upheld.[35] We said that such "speculation about what other parties may choose to do in the future is exactly the sort of indeterminacy the mootness doctrine was developed to avoid." [36]

Unlike *Ulmer*, the litigants in this case remain actually adverse: The parties that filed the petition and litigated the case below remain actively engaged in the litigation. More importantly, Sitka has pointed to no authority barring this petition from being placed on an upcoming ballot.[37] This is of particular importance because the sponsors' complaint does not request inclusion in any particular election. Accordingly, the injunctive relief the sponsors request is available. And because their initiative could be placed on an upcoming ballot, the sponsors' request for declaratory relief upholding the wording of their petition is appropriate—that is, our decision will affect the actual petition in question and will not result in an advisory opinion for a hypothetical future petition. Accordingly there is a live, definite, and concrete controversy, actively litigated between adverse parties, touching upon the parties' legal rights, and concerning attainable relief. The case is therefore not moot. We turn to the merits of that controversy.

### B. It Was Error To Hold That The Petition Is Contrary To Law And Unenforceable.

Of the two grounds the superior court gave on which to uphold the municipal clerk's denial of the petition, the first is that the petition is contrary to existing law. The superior court found Sitka's existing procedures for land transactions conflict with the Sitka Charter, and therefore the petition—

requiring Sitka's general procedures to be used in Sawmill Cove—also conflicts with the Charter. Specifically, the conflict is between Title 18's requirement that high-value land transactions be ratified by voters (i.e., through a referendum),[38] and article 6, section 1 of the Sitka Home Rule Charter, which states Sitka cannot have a referendum without advance support (signatures) from 20% of the number of people voting in the last election.

The sponsors first argue that this holding is a violation of their state constitutional right to petition, and second that their petition does not add any new procedures, let alone constitute a referendum in violation of the Charter. Because we agree with their latter claim, we cannot uphold the superior court's ruling.

### 1. The superior court's ruling did not implicate the sponsors' constitutional right to petition.

Article XI of the Alaska Constitution provides a right of initiative and referendum regarding state law, whereas AS 29.26.100 reserves to the residents of municipalities the right of local initiative and referendum.[39] A city clerk may reject a petition if it would not be enforceable as a matter of law.[40] In *Whitson v. Anchorage*,[41] we upheld a clerk's denial and found unenforceable a municipal petition that conflicted with a higher law— there a state statute.[42] However, we liberally construe "the constitutional and statutory provisions pertaining to the use of initiatives . . . so that the people are permitted to vote and express their will on the proposed legislation." [43]

---

**35.** *Id.* In fact there was no reason to believe the sponsors would even try to do so, since they were not taking part in the litigation. *Id.*

**36.** *Id.* at 777.

**37.** *See* SGC 02.40.040 (2008) (providing time limits for gathering signatures and rejecting petitions, but not for placing petitions on the ballot).

**38.** SGC 18.12.010(B) (2008).

**39.** *Carmony v. McKechnie*, 217 P.3d 818, 820 (Alaska 2009); *Griswold v. City of Homer*, 186 P.3d 558, 563 (Alaska 2008).

**40.** AS 29.26.110(a)(4).

**41.** 608 P.2d 759 (Alaska 1980).

**42.** *Id.* at 761–62.

**43.** *Carmony*, 217 P.3d at 820 (internal quotations and bracketing omitted); *see also Citizens for Implementing Med. Marijuana v. Municipality of Anchorage*, 129 P.3d 898, 901 (Alaska 2006).

The sponsors' argument that the superior court's order violated the Alaska Constitution is unpersuasive because the constitutional provisions cited by the sponsors pertain to state initiatives and referenda, while municipal initiatives and referenda are instead governed by state statutes.[44] We must look to those statutes, which allow a clerk to deny a petition that would be unenforceable because it conflicts with existing law, to resolve this first issue.[45]

### 2. It was error to hold that the initiative was contrary to law.

■ The superior court held the initiative to be contrary to law on the theory that the general Sitka municipal land disposal ordinance—in requiring a referendum for high-value disposals—violates the Sitka Charter. The superior court held that the initiative, in requiring Sawmill Cove land disposal transactions to come into conformity with the general ordinance, would by definition also violate the Charter. We conclude that if there is a problem with the existing ordinance, it cannot be the basis for finding an initiative to be contrary to law.

The specific problem found by the court was that, while it was an initiative in form, the sponsors' petition "would create a blanket or compulsory referendum for certain future actions of the Assembly. Specifically, the initiative mandates a referendum vote for all future assembly actions [in high-value Sawmill Cove transactions]." It would do so, the court found, because under current Sitka General Code 18.12.010, large-scale disposals of municipal land must be ratified by the voters. The court characterized such ratification as a referendum. In attempting to bring large-scale municipal land disposals in Sawmill Cove under the same rules and procedures governing other large-scale municipal land disposals, the initiative would subject them to the requirement of voter approval. Thus, the court found, the initiative "dispenses with the Charter requirement that a proposed referendum be supported by a certain number of elector signatures be-

fore being put to the voters" and "is in direct violation of referendum requirements under City Charter and implementing ordinance and is therefore unenforceable as a matter of law."

As the sponsors persuasively argue, their initiative would do no more than bring disposals of municipal land in the Sawmill Cove area into conformity with Sitka ordinances pertaining to disposal of municipal land generally. During the course of the proceedings below and in this court, neither party argued Sitka's general ordinances pertaining to disposal of municipal land violate the Charter. Sitka's argument that the initiative would require a referendum for transactions of a certain size (and that requiring a referendum without previously obtaining the signatures of a certain number of voters would violate the Sitka Charter) completely ignores that Sitka law currently requires exactly that: a referendum for transactions of a certain size. If Sitka believes there is a conflict between SGC 18.20.010 and the Sitka Charter—an issue never explicitly decided by any court, much less raised by any party in this litigation, and an issue Sitka conceded at oral argument is not before this court—the city should amend either its Charter or the ordinance. It may not be heard to argue that a citizen initiative, which merely attempts to extend to all transactions a Sitka law currently applicable only to some transactions, is contrary to law because current law violates the Sitka Charter.

Accordingly, we reverse the superior court's ruling that the initiative in this case was in direct violation of referendum requirements and therefore unenforceable as a matter of law.

### C. It Was Error To Hold That The Petition's Language Is Confusing And Misleading.

■ As a second independent basis for upholding the clerk's denial, the superior court found the petition confusing and misleading. Specifically, the superior court found the petition confusing and misleading

**44.** *See Carmony,* 217 P.3d at 820; *Med. Marijuana,* 129 P.3d at 901.

**45.** AS 29.26.100(a); *Whitson,* 608 P.2d at 761–62.

because it does not inform voters that it would result in automatic referenda contrary to the Sitka Charter. As explained above, we do not agree that the petition would conflict with the Charter. Moreover, we conclude that the petition is neither confusing nor misleading.

We previously considered the legal sufficiency of proposed ordinances in *Faipeas v. Municipality of Anchorage*[46] and in *Citizens for Implementing Medical Marijuana v. Municipality of Anchorage,*[47] both of which regarded proposed ordinances in Anchorage.[48] In *Faipeas,* we based our analysis on an Anchorage Municipal Code requirement that a petition "describe the ordinance or resolution sought by the petition...."[49] We concluded that "[a] description which is untruthful, misleading, or which is not complete enough to convey basic information as to what the ordinance does, cannot be regarded as a legally adequate or sufficient description within the meaning of the ordinance. The word 'describe' in a legal context carries the requirement that the required description must be fair and accurate."[50] Further, we

stated that "[t]he public interest in informed lawmaking requires that referendum and initiative petitions meet minimum standards of accuracy and fairness."[51] We then rejected the referendum petition because the title of the petition was "partisan and potentially prejudicial."[52]

In *Medical Marijuana,* we considered the legal sufficiency of a proposed ordinance in Anchorage.[53] We again noted that the Anchorage Municipal Code required a petition to "describe the ordinance or resolution sought by the petition"[54] and stated that our "main concern should be that all matters (legislative enactments, initiative petitions and proposed resolutions) should be presented *clearly* and honestly to the people of Alaska."[55] We then identified the various descriptive shortcomings and "puzzling grammatical deficiencies" of the proposed ordinance, noting that: the petition did not explain the context and purpose of the proposed initiative, the petition title was "misleading as to the proposition's scope," and the petition included multiple confusing "whereas" clauses.[56] On this basis we af-

**46.** 860 P.2d 1214 (Alaska 1993).

**47.** 129 P.3d 898 (Alaska 2006).

**48.** *Faipeas,* 860 P.2d at 1215; *Med. Marijuana,* 129 P.3d at 899.

**49.** *Faipeas,* 860 P.2d at 1219 (emphasis added) (internal quotation marks omitted); *Med. Marijuana,* 129 P.3d at 901.

**50.** *Faipeas,* 860 P.2d at 1219; *see also Med. Marijuana,* 129 P.3d at 901 (reiterating *Faipeas* holding).

**51.** *Faipeas,* 860 P.2d at 1221.

**52.** *Faipeas,* 860 P.2d at 1217, 1221. The referendum petition in *Faipeas* was titled: "REFERENDUM PETITION TO REPEAL A 'SPECIAL HOMOSEXUAL ORDINANCE.'" The contents of the petition were then laid out in much smaller print. *Id.* at 1217. We concluded that "[w]hile opponents of the ordinance regard it as giving special rights to homosexuals, proponents view it as merely adding sexual orientation to the list of other important personal characteristics and choices such as gender, religion, race, and marital status, which are protected from discrimination in public employment." *Id.*

**53.** *Med. Marijuana,* 129 P.3d at 901.

**54.** *Id.* The Anchorage Municipal Code no longer requires a petition to "describe the ordinance or resolution sought by the petition." *See Faipeas,* 860 P.2d at 1219 (internal quotation marks omitted). Anchorage Municipal Code 2.50.020 now requires a petition "set out verbatim the ordinance or resolution sought to be enacted or repealed by the petition" and "meet constitutional, charter and other legal requirements or restrictions." AMC 2.50.020(B)(3)(a), (c).

**55.** *Med. Marijuana,* 129 P.3d at 901 (emphasis in original).

**56.** *Id.* at 901–05. The petition at issue in *Medical Marijuana* was entitled "An Initiative Allowing Those Items Used with Marijuana Legal as Medicine or a Right to Privacy." *Id.* at 902. The text of the proposed initiative read:

Shall Article II of the Municipal Charter be amended to add the following section:
(14) The right to buy, sell, or possess those items which could be used to consume, grow or process marijuana for medicine, or as is in accord with the right to privacy protected by Article I, Section 22 of the Alaska Constitution.

We noted in *Medical Marijuana* that the petition as a whole could be read either to legalize marijuana paraphernalia in specific situations or to legalize possession and sale of marijuana paraphernalia in "virtually all situations," even if not

firmed the superior court's grant of summary judgment on behalf of the city.[57]

Unlike the then-existing Anchorage Municipal Code in *Faipeas* and *Medical Marijuana*, section 02.40.040 of the Sitka General Code provides that petitions shall "set out fully the ordinance or resolution sought by the petition."[58] Notably, the word "describe" does not appear in subsection (B).[59] Even assuming that the requirement to "set out fully the ordinance or resolution" contains the same descriptive requirement as the then-existing Anchorage Municipal Code in *Faipeas* and *Medical Marijuana*, the sponsors' petition in the present case is neither confusing nor misleading. The petition first identifies its purpose:

> [T]o require that the administration and disposal of tidelands, submerged land, and other real property in the Sawmill Cove Industrial Park take place and is governed by Title 18 of the Sitka General Code and, as necessary that disposals of property within the Sawmill Cove Industrial Park are subject to a public vote.

The petition then states that "Sitka General Code Section 2.38.080(a)(7) is repealed and reenacted [such that all] land transactions shall be governed in accordance with Title 18 of the Sitka General Code." The petition further provides that "Sitka General Code Section 2.38.090 ... is repealed." Finally, the petition states:

> Sitka General Code Section 18.12.010(B) is repealed and reenacted [such that] ... [u]pon sale or disposal of real property valued over five hundred thousand dollars,

or upon lease of real property, including tidelands, of a value of more than seven hundred fifty thousand dollars, the ordinance authorizing the sale, lease, or disposition shall provide that the ordinance be ratified by a majority of the qualified voters voting at a general or special election. Any such sale, lease, or disposition shall be revocable pending the outcome of the election.

The petition clearly states its general purpose to bring the treatment of Sawmill Cove Industrial Park real property under the same rules that govern all other city property, and then it sets out the specific changes to Sitka law that will accomplish this purpose. The petition does not seek to persuade voters with partisan language,[60] nor is it grammatically unclear such that voters could not reasonably understand what conduct they are authorizing.[61] The petition language is neither confusing nor misleading. We therefore reverse the decision of the superior court.

## V. CONCLUSION

Because the initiative is neither contrary to existing law nor confusing or misleading, we REVERSE the decision of the superior court. We REMAND for further proceedings consistent with this opinion.

CHRISTEN, Justice, not participating.

---

intended to be used in accordance with Alaska's medical marijuana statute or the right to privacy. *Id.* at 904.

**57.** *Id.* at 905.

**58.** SGC 02.40.040(B)(2).

**59.** *See* SGC 02.40.040(B). The superior court concluded without discussion that "[w]hile the Sitka Code does not contain the same requisite initiative description requirement as did the Anchorage code in *Faipeas*, the standards employed by the court are appropriately applied to the initiative language here." We find that it is not clear from the terms of the Sitka General Code whether Sitka intended to require a descriptive element similar to the then-existing Anchorage

Municipal Code, and we note that neither *Faipeas* nor *Medical Marijuana* resolve the question of how much context, if any, is required where a home rule municipality's own code does not contain a descriptive requirement. But the question of whether a petition must include a description, even where the relevant home rule municipal law does not mandate such a requirement, is a constitutional issue not raised by the parties and not properly before us. Because we conclude that the sponsors' petition in the present case satisfies our standards as announced in *Faipeas* and *Medical Marijuana*, we decline to reach these additional questions.

**60.** *See Faipeas*, 860 P.2d at 1219.

**61.** *See Med. Marijuana*, 129 P.3d at 898.